## IN THE UNITED STATES DISTRICT COURT
## FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ALEXIS SKLAIR, STERLING RETTKE, and NATHANIEL BROWN, on behalf of themselves and all others similarly situated, | **COMPLAINT – CLASS ACTION** |
| Plaintiffs, | **JURY TRIAL DEMANDED** |
| -vs.- | |
| MIKE BLOOMBERG 2020, INC., | Case No. _____ |
| Defendant. | |

## INTRODUCTION

Michael Bloomberg and his campaign made a promise. They promised thousands of loyal, hardworking staffers that they would have a job in both the primary and general elections, and the opportunity to work to fight and defeat Donald Trump in November. They promised salaries nearly double that of other campaigns. And they pledged to keep this promise regardless of whether Bloomberg won the Democratic nomination.

Thousands of people relied on that promise. They moved to other cities. They gave up school, jobs, and job opportunities. They uprooted their lives.

But the promise was false. After Bloomberg lost the Democratic nomination, his campaign unceremoniously dumped thousands of staffers, leaving them with no employment, no income, and no health insurance. And, worse still, the Bloomberg campaign did this during the worst global pandemic since 1918, in the face of a looming economic crisis. Now thousands of people who relied on the Bloomberg campaign's promise are left to fend for themselves.

In this lawsuit, the plaintiffs seek to hold the Bloomberg campaign accountable for the false promises that it made and thereby protect the economic security of over 2,000 working families at a uniquely precarious time in the nation's history.

## JURISDICTION AND VENUE

1.      This Court has subject matter jurisdiction under 28 U.S.C. § 1332(d)(2) because the matter at issue exceeds $5 million, exclusive of interest and costs, and is a class action in which at least one member is a citizen of a different state than that of the defendant.

2.      This Court has personal jurisdiction over the defendant. There is general jurisdiction because Mike Bloomberg 2020, Inc. is headquartered in this district at 909 Third Avenue, New York, NY 10022. There also is specific jurisdiction over the action, as the claims arise out of or relate to activities or events in this district, such as the false promises that were made by the defendant in this district.

3.      Venue is proper in this district under 28 U.S.C. § 1391(b)(1), as the defendant resides in this district, and is proper under 28 U.S.C. § 1391(b)(2), as a substantial part of the events or omissions giving rise to the plaintiffs' claims occurred in this district.

## THE PARTIES

4.      Alexis Sklair is a resident of Charleston, South Carolina, and worked for Mike Bloomberg 2020 in Georgia. She began working as a field organizer for the campaign in January 2020, and was terminated in March 2020. During her employment with the campaign, she earned a salary of $6,000 per month and received health insurance and other employee benefits.

5.      Sterling Rettke is a resident of Bellingham, Washington, and worked for Mike Bloomberg 2020 in Washington State. He began working for the campaign as a field organizer in January 2020, and was terminated in March 2020. During his employment with the campaign, he earned a salary of $6,000 per month and received health insurance and other employee benefits.

6.    Nathaniel Brown is a resident of Salt Lake City, Utah, and worked for Mike Bloomberg 2020 in Utah. He began working for the campaign as a field organizer in January 2020, and was terminated in March 2020. During his employment with the campaign, he earned a salary of $6,000 per month and received health insurance and other employee benefits.

7.    Mike Bloomberg 2020, Inc. ("Mike Bloomberg 2020" or the "Bloomberg campaign") is the presidential campaign of Michael Bloomberg. Its headquarters are located at 909 Third Avenue, New York, NY 10022.

## FACTUAL ALLEGATIONS

8.    In January 2020, Alexis Sklair relocated from Charleston, South Carolina to Savannah, Georgia to work as a field organizer for Mike Bloomberg 2020. Before joining the Bloomberg campaign, she had worked as an organizer for Cory Booker's presidential campaign, as well as other Democratic political campaigns. When Senator Booker dropped out of the presidential election in January 2020, Ms. Sklair considered whether she would join another presidential campaign or pursue other work opportunities. At the time that Ms. Sklair accepted the position with Mike Bloomberg 2020, she had just been offered a position on a state senate campaign in South Carolina that would have likely lasted throughout the general election campaign. Because she accepted the job with Mike Bloomberg 2020, she declined the offer to work for the state senate campaign. She also declined an offer to work for another presidential campaign.

9.    Sterling Rettke is a recent a graduate of Western Washington University who agreed to work as a field organizer for Mike Bloomberg 2020 in January 2020. When he accepted the position with Mike Bloomberg 2020, he decided to postpone applying for law school.

10.   Nathaniel Brown moved from Las Vegas, Nevada to Salt Lake City, Utah to work as a field organizer for Mike Bloomberg 2020 in January 2020. Before joining the Bloomberg

campaign, he had worked as an organizer for Kamala Harris's presidential campaign. When Senator Harris dropped out of the presidential election in December 2020, he considered whether he would join another presidential campaign or pursue other work opportunities. When he accepted the position with Bloomberg 2020, he dropped out of the advanced stages of the hiring process for a job as an organizer with the Democratic Congressional Campaign Committee (DCCC), a role in which Mr. Brown would have worked on the Democratic nominee's election campaign through November 2020.

11.    Like other field staffers who were hired by Mike Bloomberg 2020, Ms. Sklair, Mr. Rettke, and Mr. Brown were all attracted to working for the Bloomberg campaign largely because Michael Bloomberg and the Bloomberg campaign promised that they and all the other Bloomberg field staffers (i.e., field organizers, deputy field organizers, and regional organizing directors) would be employed by Mike Bloomberg 2020 to work *both* on the primary election to make Michael Bloomberg the Democratic nominee *and* on the general election to defeat Donald Trump, regardless of whether Bloomberg won the nomination, and that the Bloomberg campaign would keep open and financially support its field offices through the general election.

12.    Ms. Sklair, Mr. Rettke, and Mr. Brown and other field staffers hired by Mike Bloomberg 2020 were steadfast in their goal of defeating Donald Trump, out of their grave concern that Donald Trump is a threat to the nation's democracy and security. They wholeheartedly agreed with the words that Michael Bloomberg uttered when he announced his campaign on November 24, 2019:

> We cannot afford four more years of President Trump's reckless and unethical actions. He represents an existential threat to our country and our values. If he wins another term in office, we may never recover from the damage. The stakes could not be higher. We must win this election. And we must begin rebuilding America.

Mike Bloomberg 2020, *Mike Bloomberg Announces 2020 Democratic Presidential Campaign* (Nov. 24, 2019), https://mikebloom.bg/3bdZqaS.

13.    The Bloomberg campaign's hiring managers understood that potential applicants for field staff positions like the plaintiffs would be motivated to work for Mike Bloomberg 2020 because of their interest in working on the general election to defeat Donald Trump. Accordingly, the Mike Bloomberg 2020 hiring managers expressly promised field staff applicants for Mike Bloomberg 2020 that they would be employed by Mike Bloomberg 2020 to perform work on the primary campaign to elect Michael Bloomberg as the Democratic nominee *and* on the general election, regardless of whether Bloomberg won the nomination, and stated that the Bloomberg campaign would keep open and financially support its field offices through the general election campaign.

14.    The Mike Bloomberg 2020 hiring managers at the campaign headquarters made such statements to field staff applicants, including the plaintiffs, when conducting initial interviews of staffers before such staffers interviewed with regional field directors.

15.    In addition, regional hiring managers repeated the same statements to field staff applicants, including to the plaintiffs, based on the explicit direction of campaign headquarters and interview sheets that instructed the staff person conducting the interview to emphasize that the applicant would be working through the November 2020 general election, even though the applicant's location would not be guaranteed.

16.    The defendant's interview template instructed interviewers to inform applicants: "**Employment through November 2020 with Team Bloomberg** (not guaranteed location you are at now)." (Emphasis added.) In other words: though the employees' "location" was not guaranteed, "employment through November 2020," *i.e.,* through the general election, *was* guaranteed.

17.     Michael Bloomberg and his campaign made similar public statements on a number of occasions about how his campaign would continue to keep open its field offices and employ the campaign's field staffers to perform general election work even if Bloomberg failed to secure the Democratic nomination. Bloomberg's promises to keep open and finance his field offices and employ his field staffers were widely reported and understood by the public and field staff applicants to be a true representation. Josh Lederman and Stephanie Ruhle, *Bloomberg to fund sizable campaign effort through November even if he loses Democratic nomination; Exclusive: The former New York City mayor plans to continue paying hundreds of staffers and funding his digital operation to defeat Trump even if he's not the nominee,* NBC News (Jan. 10, 2020), https://nbcnews.to/3dqaAuY (stating that the Bloomberg campaign told NBC News that his "army" of staffers "will march on through the general election in November even if he loses the Democratic nomination" and that "he has committed to paying" those staffers to work in battleground states).

18.     Even days before Bloomberg dropped out of the presidential race, he "specified that he planned to keep his 'main field offices' open, regardless of the results on Super Tuesday." Rebecca Ruiz, *Bloomberg's Job Security Promises Are Falling Through, Campaign Workers Say*, N.Y. Times (Mar. 10, 2020), https://nyti.ms/2Wy673D.

19.     The Bloomberg campaign made these promises about how field staff applicants would do both primary and general election work and how the campaign would operate its field offices during the general election because the campaign was launched just months before voters would begin casting ballots in the Democratic contest, and offering this unique opportunity to perform both primary and general election work was necessary to entice many staffers to join Mike Bloomberg 2020. It is unprecedented for a candidate for president to promise staffers that they would be employed to perform work on a general election and that a primary candidate would

keep open his field offices during the general election, regardless of the outcome of the candidate's primary election.

20.    But all of these promises were false.

21.    Notwithstanding the fact that the defendant made these statements, the campaign required all of its field staffers to sign take-it-or-leave-it form contracts that identified the staffers as "at-will" employees who could be "terminate[d] . . . at any time, with or without notice and with or without cause, for any reason or for no reason." In at least some cases, representatives of Mike Bloomberg 2020 made false or misleading statements to members of the putative class about the law—*e.g.*, that a contract must specify that employment is at-will in a state that recognizes at-will employment—in order to convince the field staffers to sign the form contracts that the campaign presented to them.

22.    In early March 2020, Michael Bloomberg announced that he would no longer seek the Democratic nomination and endorsed former Vice-President Joe Biden's campaign.

23.    Weeks later, on March 20, 2020, Mike Bloomberg 2020 informed the plaintiffs and the other field staffers that they had been terminated, that they would receive their last paychecks at the end of March 2020, that they would lose their health insurance at the end of March, and that they would be employed by Mike Bloomberg 2020 to perform work on the general election.

24.    Instead of making good on the campaign's promise to employ the field staffers on the general election campaign, Mike Bloomberg 2020's representatives told the plaintiffs and the other field staffers that, like anyone else, they could apply for field staff positions with the Democratic National Committee to work on the general election. However, the former Bloomberg campaign staffers applications will be considered in the same fashion as all other applicants (on a competitive basis without any preference); it is likely that a large portion of former

Bloomberg campaign staffers will not be hired by the DNC even if they are qualified for those positions; and it is near certain that any former Bloomberg campaign staffers who get such a job will earn substantially less if they are hired by the DNC. *See* Rebecca R. Ruiz, *The Bloomberg Campaign Is a Waterfall of Cash*, N.Y. Times (Feb. 13. 2020), https://www.nytimes.com/2020/02/13/us/politics/bloomberg-campaign-cash.html ("The [Bloomberg] campaign's pay for field organizers, the equivalent of $72,000 annually, is well above the $42,000 that other campaigns have offered.").

25.     The termination of the Bloomberg field staffers was widely reported as the campaign breaking a clear and fundamental promise that the campaign had made to its field staffers. *See* Christopher Cadelago & Sally Goldenberg, *Bloomberg aids cut loose despite yearlong employment promise; They do get to keep their campaign-issued iPhones and MacBooks*, Politico (Mar. 9, 2020), https://bit.ly/2wvsYSH; Rebecca Ruiz, *Bloomberg's Job Security Promises Are Falling Through, Campaign Workers Say*, N.Y. Times (Mar. 10, 2020), https://nyti.ms/2Wy673D; Hayley Miller, *Bloomberg Aides Say Campaign Not Following Through on Employment Promises: Reports*, Huffington Post (Mar. 10, 2020), https://bit.ly/2xi6HrG.

26.     From one day to the next, defendant left thousands of loyal employees without a paycheck and without health insurance, in the middle of the worst global pandemic since 1918.

27.     Ms. Sklair, Mr. Rettke, and Mr. Brown each will lack any income and health insurance starting in April 2020. This is particularly distressing given the global health and economic crises.

28.     Each of these plaintiffs would have pursued other work opportunities had they not accepted a field staff position with Mike Bloomberg 2020. For example, when Ms. Sklair accepted the position with Mike Bloomberg 2020, she turned down both a position on a state senate

campaign in South Carolina that would have likely lasted throughout the general election campaign and an offer from another presidential campaign. When Mr. Brown accepted his position with Mike Bloomberg 2020, he dropped out of the advanced stages of the hiring process for a job as an organizer with the Democratic Congressional Campaign Committee (DCCC) in which Mr. Brown would have worked on the general election campaign. And because Mr. Rettke postponed his law school applications to work on the Bloomberg campaign, he will not be able to attend law school until the fall of 2021, even though he now would be available to start law school in the fall of 2020.

29.    The defendant knowingly made false promises—that field staffers would be guaranteed to perform both primary and general election work for the campaign, and that the field offices would be kept open during the general election—to induce the plaintiffs and the putative class members to accept employment with the Bloomberg campaign.

30.    The statements by Mike Bloomberg 2020 that the staffers would perform both primary and general election work for the campaign were material facts that directly influenced the plaintiffs' and the other staffers' decisions to enter into an employment relationship with Mike Bloomberg 2020 and perform work for the campaign for months instead of pursuing other work opportunities.

31.    The plaintiffs and the other putative class members did not know that the defendant's representations were false, and would not have accepted their positions with Mike Bloomberg 2020 in the absence of the campaign's false representations.

32.    The plaintiffs and the other putative class members reasonably relied on the defendant's false representations.

33.    The plaintiffs and the other putative class members were injured by the defendant's false statements. They all left or forewent other work opportunities or educational plans, and they undertook considerable time and effort to relocate or rearrange their lives to work on the

9

Bloomberg campaign. They will not be employed by Mike Bloomberg 2020 on the general election to defeat Donald Trump, and it is unlikely that they will be hired to work on another presidential campaign in the general election. And they are now left without any employment, income, or health insurance in the middle of a global pandemic and as the nation heads into a deep recession with skyrocketing unemployment.

34.     Many of the members of the putative class would have accepted longer-term employment and would still be employed in those positions had they not been induced to accept positions with Mike Bloomberg 2020. Some class members, like Mr. Sterling, would have applied for graduate school for the 2020-2021 school year, had they not been fraudulently induced to accept such employment, and now it is too late to apply for the appropriate or desired programs.

## CLASS ACTION ALLEGATIONS

35.     The plaintiffs bring this action as a class action under Federal Rule of Civil Procedure 23 on behalf of the following class: All persons who were employed by Mike Bloomberg 2020 as field staff (i.e., field organizers, deputy field organizers, or regional organizing directors/regional field directors) since November 2019 and who were terminated by Mike Bloomberg 2020 in March 2020 because the campaign will not continue its operations in the general election, prior to the commencement of the 2020 general election.

### Numerosity

36.     The members of the class are so numerous that joinder of all members is impracticable. There are more than 2,000 members of the class, and the members of the class are geographically dispersed across the country.

### Commonality

37.     There are common questions of both law and fact in this action.

38.     The central questions in this case that will generate a common answer as to the class are whether the Bloomberg campaign made false statements about how the field staffers would have the opportunity to perform work on both the primary and general election and that the campaign would keep open its field offices during the general election, whether those statements were made for the purpose of inducing the field staffers to rely upon them, and whether the field staffers reasonably relied on those statements to their detriment. The plaintiffs' claims raise additional common questions, such as whether the plaintiffs and putative class members reasonably relied on the defendant's promises to their detriment and what the appropriate remedies are for the defendant's fraudulent inducement.

39.     Because the Bloomberg campaign made the same false statements to field staff applicants throughout the nation from its New York headquarters and through its regional hiring personnel, the answers to these questions will produce common answers for all members of the class.

Typicality

40.     The plaintiffs' claims are typical of the other members of the class because the claims challenge a uniform policy or practice by which the Bloomberg campaign made false statements to field staff applicants for the purpose of inducing those applicants to agree to work for Mike Bloomberg 2020, because the plaintiffs bring the same legal claim as the other members of the class, and because the plaintiffs suffered the same injuries as other members of the class, including forgoing other work or educational opportunities and experiencing a loss of income, health insurance, and other benefits.

Adequacy of Representation

41.     The plaintiffs will fairly and adequately protect the interests of other members of the class.

42.     The plaintiffs do not have any conflict with any other member of the class.

43.     The defendant does not have any unique defenses against the plaintiffs that would interfere with the plaintiffs' representation of the class.

44.     The plaintiffs are represented by counsel with significant experience in prosecuting class action litigation and representing workers.

**Rule 23(b)(3)**

45.     The claims can be certified as a class action under Federal Rule of Civil Procedure 23(b)(3) because the questions of law and fact common to the members of the class predominate over questions affecting only individual members and a class action is superior to other available methods for the fair and efficient resolution of this controversy.

46.     The common questions of law and fact concern whether the Bloomberg campaign knowingly made false statements about how the field staffers would have the opportunity to perform work on both the primary and general election and how the campaign's field offices would be kept open during the general election, whether those statements were made for the purpose of inducing the field staffers to rely upon them, and whether the staffers reasonably relied on those statements to their detriment.

47.     A class action is superior to other available methods for the fair and efficient resolution of this controversy.  By bringing these claims together in a single class proceeding, the issues will be efficiently resolved in a single proceeding rather than multiple proceedings. Class certification is a superior method of adjudicating these issues because it will obviate the need for unduly duplicative litigation that might result in inconsistent judgments about the defendant's liability for false statements that were made to campaign staffers throughout the nation and the appropriate remedies for such violations.

48.     The factors set forth in Rule 23(b)(3) all support certification. First, the members of the class have an interest in a unitary adjudication of the issues presented in this action, as opposed to an individual interest in controlling the prosecution of separate actions. Each member of the class is unlikely to have a sufficient amount of individual damages—likely tens of thousands of dollars—to justify pursuing an individual federal court action or to obtain counsel to pursue an individual action. Second, to the plaintiffs' knowledge, no other lawsuits have been filed by members of the putative class regarding the issues involved in this litigation. Third, this is the most appropriate forum for these claims because, among other reasons, jurisdiction and venue are proper, the defendant resides in this district, and the defendant made the false statements to staffers throughout the nation from the Mike Bloomberg 2020 headquarters in this district. Fourth, there will be no difficulties in managing this case as a class action.

## COUNT I
## FRAUDULENT INDUCEMENT
### (On Behalf of the Class)

49.     The defendant fraudulently induced the plaintiffs and members of the putative class to accept employment as field staffers based on the false representation that field staffers would be employed by Mike Bloomberg 2020 not only  to work  on the primary election to make Michael Bloomberg the Democratic nominee but also on the general election campaign to defeat President Trump irrespective of whether Michael Bloomberg was the Democratic nominee.  Defendant also repeatedly promised that the campaign would keep open and finance its field offices during the general election, regardless of whether Bloomberg won the Democratic nomination.

50.     The opportunity to work on both the primary and the general election and that the field offices would be kept open during the general election were material existing facts for the plaintiffs and other applicants to accept field staff positions with Mike Bloomberg 2020.

51.     Upon information and belief, these representations were false and known to the defendant as false at the time they were made.

52.     Mike Bloomberg 2020 made these representation to induce the plaintiffs and over 2,000 other persons to accept positions as field staff, and the plaintiffs and other field staffers reasonably relied on these representations in ignorance of their falsity.

53.     As a result of the foregoing, the plaintiffs and other members of the putative class lost, *inter alia*, income, jobs, and job opportunities, have been injured by the defendant's false representations, and are entitled to recover from the defendant amounts to be proven at trial for compensatory damages and punitive damages.

## COUNT II
### Promissory Estoppel
### (On Behalf of the Class)

54.     The defendant repeatedly promised the plaintiffs and members of the putative class that they would be employed by Mike Bloomberg 2020 to work not only on the primary election to make Michael Bloomberg the Democratic nominee, but also on  the general election campaign to defeat President Trump irrespective of whether Michael Bloomberg was the Democratic nominee.  Defendant also repeatedly promised that the campaign would keep open and finance its field offices during the general election, regardless of whether Bloomberg won the Democratic nomination.

55.     In reasonable reliance on these promises, the plaintiffs and proposed members of the class left their jobs to accept positions as field staff for Mike Bloomberg 2020 and/or did not pursue other offers of employment or postponed educational opportunities in order to accept such positions as field staff.

56.     In reasonable reliance on clear promises made by the defendant, the plaintiffs and members of the putative class suffered damages.

57.     As a result of the foregoing, the plaintiffs and members of the putative class are entitled to recover from the defendant amounts to be proven at trial for compensatory damages.

## PRAYER FOR RELIEF

The plaintiffs ask that judgment be entered against Mike Bloomberg 2020 on all claims and respectfully request that this Court award the following relief:

(a) Certify this case as a class action on behalf of the putative class;

(b) Designate the plaintiffs as representatives of the class;

(c) Designate the plaintiffs' counsel of record as class counsel;

(d) Declare that the defendant is liable to the plaintiffs and the members of the putative class for fraudulent inducement and promissory estoppel;

(e) Enter an order requiring the defendant to pay compensatory and punitive damages to plaintiffs and the members of the putative class, and award attorneys' fees and costs; and

(f) Grant such other and further relief as the Court deems proper, appropriate, just, or equitable.

## JURY DEMAND

Under Federal Rule of Civil Procedure 38(b), the plaintiffs demand a trial by jury.


Dated: New York, New York
       March 23, 2020

                              EMERY CELLI BRINCKERHOFF
                              & ABADY LLP

                              _____/s/_____
                              Ilann M. Maazel
                              David Berman

                              600 Fifth Avenue, 10th Floor
                              New York, New York 10020
                              (212) 763-5000


                              GUPTA WESSLER PLLC

                              Peter Romer-Friedman

15

1900 L Street, NW, Suite 312
Washington, DC 20036
Phone: (202) 888-1741

*Attorneys for Plaintiffs and the Putative Class*