UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

ALEXIS SKLAIR, STERLING RETTKE,
NATHANIEL BROWN, BRIAN GILES,
JOCELYN REYNOLDS, and CARYN
AUSTEN, on behalf of themselves and all
others similarly situated,

                  Plaintiffs,

      v.

MIKE BLOOMBERG 2020, INC., and
MICHAEL BLOOMBERG,

                Defendants.

20 Civ. 2495 (KMW)(GWG)

**MEMORANDUM OF LAW IN SUPPORT OF
DEFENDANTS' MOTION TO DISMISS THE FIRST AMENDED COMPLAINT**

## <u>TABLE OF CONTENTS</u>

**Page**

PRELIMINARY STATEMENT ......................................................................... 1

STATEMENT OF RELEVANT FACTS ALLEGED.......................................... 2

    A.    The Campaign Hires Plaintiffs as At-Will Employees................. 2
    B.    Mr. Bloomberg's Alleged Statements.......................................... 4
    C.    The Alleged Individualized Oral Promises. .................................. 5

LEGAL ARGUMENT ...................................................................................... 5

I.    ALL OF PLAINTIFFS' CLAIMS FAIL BECAUSE THEY WERE
    EMPLOYEES AT WILL........................................................................ 6

    A.    Promissory Estoppel. .................................................................. 6
    B.    Fraudulent Inducement. ............................................................... 7

II.    THE PROMISSORY ESTOPPEL CLAIM ALSO FAILS FOR FAILURE TO
    PLEAD AN UNCONSCIONABLE INJURY. ......................................... 9

    A.    The Statute of Frauds Precludes Any Claim of an Oral
         Agreement to Employ Plaintiffs for a Fixed Term. ...................... 9
    B.    Plaintiffs Cannot Establish An Unconscionable Injury. .......... 11

III.    PLAINTIFFS DO NOT ADEQUATELY ALLEGE THE REMAINING
    ELEMENTS OF FRAUDULENT INDUCEMENT. ......................... 12

    A.    Plaintiffs Do Not Allege A Misrepresentation of Present Fact. ........... 12
    B.    Plaintiffs Do Not Allege An Intent to Deceive. ......................... 13
    C.    Plaintiffs Do Not Allege Any Non-Speculative Injury. ............. 14

IV.    PLAINTIFFS CANNOT STATE A CLAIM AGAINST MR. BLOOMBERG
    INDIVIDUALLY. ...................................................................... 16

    A.    Plaintiffs Do Not Allege Any Clear and Unambiguous Promise by
         Mr. Bloomberg......................................................................... 16
    B.    Plaintiffs' Allegations as to Mr. Bloomberg Fail to Satisfy the
         Heightened Pleading Standard for Fraud Claims....................... 18
    C.    Plaintiffs Do Not Allege that Mr. Bloomberg Authorized
         Campaign Staff to Make Promises on His Behalf. ..................... 19

V.    PLAINTIFFS' CLASS ALLEGATIONS SHOULD BE STRICKEN............. 20

    A.    The Court May Strike Class Allegations at the Pleading Stage. .......... 20
    B.    The Highly Individualized Inquiries Necessary to Prove
         Plaintiffs' Claims Preclude Class Treatment............................. 21

         1.    Plaintiffs' Claims Require Individualized Inquiries Into The
             Substance Of Their Communications With The Campaign. .................. 22

2.   Plaintiffs' Claims Require Individualized Inquiries Into Plaintiffs' State Of Mind.............................................................................................. 22

3.   Plaintiffs' Claims Require Individualized Inquiries Into Plaintiffs' Alleged Injuries....................................................................................... 24

CONCLUSION.................................................................................................................... 26

## TABLE OF AUTHORITIES

**Page(s)**

CASES

*4C Foods Corp. v. Package Automation Co.*,
No. 14-cv-2212, 2014 WL 6602535 (S.D.N.Y. Nov. 18, 2014) ..............................................19

*ABA Refinery Corp. v. Republic Metals Ref. Corp.*,
No. 15–cv-8731, 2017 WL 4481170 (S.D.N.Y. Oct. 5, 2017) ................................................10

*Allison v. Clos-ette Too, LLC*,
No. 14-cv-1618, 2014 WL 4996358 (S.D.N.Y. Sept. 15, 2014), *report and
recommendation adopted*, 2014 WL 5002099 (S.D.N.Y. Oct. 7, 2014) ..................................7

*Amchem Prods., Inc. v. Windsor*,
521 U.S. 591 (1997) .............................................................................................................22

*Andrews v. Sotheby Int'l Realty, Inc.*,
No. 12-cv-8824, 2014 WL 626968 (S.D.N.Y. Feb. 18, 2014), *aff'd*, 586 F.
App'x 76 (2d Cir. 2014) ...........................................................................................................7

*Ashcroft v. Iqbal*,
556 U.S. 662 (2009) ................................................................................................................6

*Ashmore v. CGI Grp. Inc.*,
No. 11-cv-8611, 2012 WL 2148899 (S.D.N.Y. June 12, 2012) ..............................................7

*Baguer v. Spanish Broad. Sys., Inc.*,
No. 04-cv-8393, 2007 WL 2780390 (S.D.N.Y. Sept. 20, 2007) ............................................11

*Ball v. N.Y.C. Council*,
No. 17-cv-4828, 2018 WL 4625625 (S.D.N.Y. Sept. 26, 2018) ............................................20

*Baraliu v. Vinya Capital, L.P.*,
765 F. Supp. 2d 289 (S.D.N.Y. 2011) ......................................................................................9

*Bd. of Trustees ex rel. Gen. Ret. Sys. of Detroit v. BNY Mellon, N.A.*,
No. 11-cv-6345, 2012 WL 3930112 (S.D.N.Y. Sept. 10, 2012) ............................................17

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ..............................................................................................................5, 6

*Berger v. Roosevelt Inv. Grp. Inc.*,
28 A.D.3d 345 (1st Dep't 2006) ..............................................................................................8

*Berman v. Neo@Ogilvy LLC*,
No. 14-cv-00523, 2014 WL 6865718 (S.D.N.Y. Aug. 15, 2014) ............................................4

*Bessemer Tr. Co. v. Branin*,
   498 F. Supp. 2d 632 (S.D.N.Y. 2007), *aff'd*, 618 F.3d 76 (2d Cir. 2010) ...............................7

*Brady v. Calyon Sec. (USA)*,
   406 F. Supp. 2d 307 (S.D.N.Y. 2005)................................................................................8, 13

*Broussard v. Meineke Discount Muffler Shops, Inc.*,
   155 F.3d 331 (4th Cir. 1998) ...................................................................................................23

*Canelle v. Russian Tea Room Realty LLC.*,
   No. 01-cv-0616, 2002 WL 287750 (S.D.N.Y. Feb. 27, 2002) ...............................................18

*Cannon v. Douglas Elliman, LLC*,
   No. 06-cv-7092, 2007 WL 4358456 (S.D.N.Y. Dec. 10, 2007) .............................................20

*Chambers v. Time Warner, Inc.*,
   282 F.3d 147 (2d Cir. 2002).................................................................................................2, 4

*Cloke-Browne v. Bank of Tokyo-Mitsubishi UFJ, Ltd.*,
   No. 10-cv-2249, 2011 WL 666187 (S.D.N.Y. Feb. 9, 2011) ...........................................13, 18

*CMC Transaction Servs., LLC v. IDEX Corp.*,
   No. 18-cv-4925, 2019 WL 3496643 (S.D.N.Y. Aug. 1, 2019).................................................10

*Cohen v. Avanade, Inc.*,
   874 F. Supp. 2d 315 (S.D.N.Y. 2012).....................................................................................11

*Connaughton v. Chipotle Mexican Grill, Inc.*,
   29 N.Y.3d 137 (2017) ..............................................................................................................14

*Dalton v. Union Bank of Switzerland*,
   134 A.D.2d 174 (1st Dep't 1987) ............................................................................................12

*Davis v. Navient Corp.*,
   No. 17-cv-00992, 2018 WL 1603871 (W.D.N.Y. Mar. 12, 2018), *report and
   recommendation adopted*, 2019 WL 360173 (W.D.N.Y. Jan. 29, 2019) ...................20, 22, 25

*Deluca v. Bank of Tokyo-Mitsubishi UFJ, Ltd.*,
   No. 06-cv-5474, 2008 WL 857492 (S.D.N.Y. Mar. 31, 2008)..........................................13, 14

*Dhir v. Carlyle Grp. Emp. Co.*,
   No. 16-cv-06378, 2017 WL 4402566 (S.D.N.Y. Sept. 29, 2017) .........................................7, 9

*Downey v. Adloox Inc.*,
   238 F. Supp. 3d 514 (S.D.N.Y. 2017)...................................................................................8, 12

*Eternity Global Master Fund Ltd. v. Morgan Guar. Tr. Co. of N.Y.*,
   375 F.3d 168 (2d Cir. 2004)....................................................................................................18

*Fishoff v. Coty Inc.*,
   676 F. Supp. 2d 209 (S.D.N.Y. 2009), *aff'd*, 634 F.3d 647 (2d Cir. 2011) ...........................12

*Geary v. Hunton & Williams*,
   257 A.D.2d 482 (1st Dep't 1999) ...........................................................................................16

*George v. Thomas*,
   No. 19-cv-3020, 2020 WL 1643486 (E.D.N.Y. Mar. 31, 2020)...............................................12

*Gootee v. Global Credit Servs., LLC*,
   139 A.D.3d 551 (1st Dep't 2016) ...........................................................................................10

*Hamzaraj v. ABM Janitorial Ne. Inc.*,
   No. 15-cv-2030, 2016 WL 3571387 (S.D.N.Y. June 27, 2016) ................................................4

*Highland Capital Mgmt. LP v. Schneider*,
   607 F.3d 322 (2d Cir. 2010)...................................................................................................19

*Hoeffner v. Orrick, Herrington & Sutcliffe LLP*,
   61 A.D.3d 614 (1st Dep't 2009) .............................................................................................15

*Hudson v. Delta Air Lines, Inc.*,
   90 F.3d 451 (11th Cir. 1996) .................................................................................................24

*In re Petrobras Sec.*,
   862 F.3d 250 (2d Cir. 2017)...................................................................................................22

*In re Rail Freight Fuel Surcharge Antitrust Litig.-MDL No. 1869*,
   725 F.3d 244 (D.C. Cir. 2013) ...............................................................................................24

*Ipcon Collections LLC v. Costco Wholesale Corp.*,
   698 F.3d 58 (2d Cir. 2012).................................................................................................8, 12

*Jones v. Am. Gen. Life & Accident Ins. Co.*,
   213 F.R.D. 689 (S.D. Ga. 2002) ............................................................................................22

*Kassman v. KPMG LLP*,
   416 F. Supp. 3d 252 (S.D.N.Y. 2018).....................................................................................21

*Kaye v. Grossman*,
   202 F.3d 611 (2d Cir. 2000).....................................................................................................6

*Kinsella v. Powerguard Specialty Ins. Servs., LLC*,
   112 A.D.3d 414 (1st Dep't 2013) ...........................................................................................16

*Kleinberg v. Radian Grp., Inc.*,
   No. 01-cv-9295, 2002 WL 31422884, at *11 (S.D.N.Y. Oct. 29, 2002), *report
   and recommendation adopted*, 240 F. Supp. 2d 260 (S.D.N.Y. 2002).......................................7

*Lama Holding Co. v. Smith Barney Inc.*,
88 N.Y.2d 413 (1996) ...........................................................................................15

*Landtek Grp., Inc. v. N. Am. Specialty Flooring, Inc.*,
No. 14-cv-1095, 2016 WL 11264722 (E.D.N.Y. Aug. 12, 2016) ...........................17

*Leschak v. Raiseworks, LLC*,
No. 14-cv-8072, 2016 WL 11695068 (S.D.N.Y. Mar. 7, 2016)...........................6, 7

*Luedke v. Delta Airlines, Inc.*,
155 B.R. 327, 328 (S.D.N.Y. 1993).......................................................................23

*Maddison v. Comfort Sys. USA (Syracuse), Inc.*,
No. 17-cv-0359, 2018 WL 679477 (N.D.N.Y. Feb. 1, 2018)................................21

*MCI Worldcom Commc'ns, Inc. v. N. Am. Commc'ns Control, Inc.*,
No. 98-cv-6818, 2003 WL 21279446 (S.D.N.Y. June 4, 2003) ...........................12

*Meyercord v. Curry*,
38 A.D.3d 315 (1st Dep't 2007) ...........................................................................8

*Moore v. PaineWebber, Inc.*,
306 F.3d 1247 (2d Cir. 2002)................................................................................22

*Murdock-Alexander v. Tempsnow Emp't & Placement Servs., LLC*,
No. 16-cv-5182, 2016 WL 6833961 (N.D. Ill. Nov. 21, 2016) ...........................21

*Panzella v. City of Newburgh*,
231 F.Supp.3d 1 (S.D.N.Y. 2017).............................................................................2

*Pasternak v. Dow Kim*,
961 F. Supp. 2d 593 (S.D.N.Y. 2013).....................................................................15

*Pearce v. Manhattan Ensemble Theater, Inc.*,
528 F. Supp. 2d 175 (S.D.N.Y. 2007).....................................................................10

*Rather v. CBS Corp.*,
68 A.D.3d 49 (1st Dep't 2009) ...............................................................................15

*Reynolds v. BLM Co., Inc.*,
No. 12-cv-1105, 2014 WL 12888364 (W.D. Ark. Mar. 17, 2014)........................24

*Rivera v. City of N.Y.*,
392 F. Supp. 2d 644 (S.D.N.Y. 2005)....................................................................12

*Rowell v. Voortman Cookies, Ltd.*,
No. 02-C-0681, 2005 WL 1026715 (N.D. Ill. Apr. 27, 2005)................................24

*RSM Prod. Corp. v. Fridman*,
    643 F. Supp. 2d 382 (S.D.N.Y.2009) ......................................................................................20

*Salon Fad v. L'Oreal USA, Inc.*,
    No. 10-cv-5063, 2011 WL 4089902 (S.D.N.Y. Sept. 14, 2011) ............................................24

*Sang Lan v. Time Warner, Inc.*,
    No. 11-cv-2870, 2013 WL 1703584 (S.D.N.Y. Apr. 19, 2013) ............................................17

*Santiago v. Merriman River Assocs., LLC*,
    No. 17-cv-2054, 2018 WL 2465358 (D. Conn. June 1, 2018) ..............................................21

*Sateriale v. RJ Reynolds Tobacco Co.*,
    No. 09-cv-08394, 2014 WL 7338877 (C.D. Cal. Dec. 19, 2014) .........................................24

*Shaoxing Daqin Imp. & Exp. Co. v. Notations, Inc.*,
    No. 19-cv-2732, 2019 WL 6498397 (S.D.N.Y. Dec. 3, 2019) ..............................................14

*Shields v. Citytrust Bancorp, Inc.*,
    25 F.3d 1124 (2d Cir. 1994) ................................................................................................13

*Smalley v. Dreyfus Corp.*,
    10 N.Y.3d 55 (2008) ...........................................................................................................16

*Sprague v. Gen. Motors Corp.*,
    133 F.3d 388 (6th Cir. 1998) ..............................................................................................23

*Stillman v. Townsend*,
    No. 05-cv-6612, 2006 WL 2067035 (S.D.N.Y. July 26, 2006) .............................................11

*Thompson v. Cmty. Ins. Co.*,
    213 F.R.D. 284 (S.D. Ohio 2002) ........................................................................................24

*Wal-Mart Stores, Inc. v. Dukes*,
    564 U.S. 338 (2011) ............................................................................................................21

*Walney v. SWEPI LP*,
    No. 13-cv-102, 2015 WL 5333541 (W.D. Pa. Sept. 14, 2015) .............................................24

*Wexler v. Allegion (UK) Ltd.*,
    No. 16-cv-2252, 2018 WL 1626346 (S.D.N.Y. Mar. 30, 2018) ............................................13

*Wurtsbaugh v. Banc of America Securities LLC*,
    No. 05-cv-6220, 2006 WL 1683416 (S.D.N.Y. June 20, 2006) ..............................................8

*Yarger v. ING Bank, FSB*,
    285 F.R.D. 308 (D. Del. 2012) ............................................................................................24

**STATUTES**

N.Y. Gen. Oblig. Law § 15-301(1) ...................................................................................9

**OTHER AUTHORITIES**

Fed. R. Civ. P. 9(b) .......................................................................................13, 14, 18

Fed. R. Civ. P. 12(b)(6)........................................................................................1, 2, 5

Fed. R. Civ. P. 23 ..........................................................................................1, 20, 21, 22

Defendants Mike Bloomberg 2020, Inc. (the "Campaign") and Michael Bloomberg (together, "Defendants") respectfully move this Court for an Order dismissing with prejudice the claims asserted in the First Amended Complaint (Dkt. 39) ("FAC") pursuant to Fed. R. Civ. P. 12(b)(6), or, in the alternative, striking the class allegations pursuant to Fed. R. Civ. P. 23(d)(1)(D).

## PRELIMINARY STATEMENT

Plaintiffs were at-will employees of the Campaign.  We know this not only because all employment in New York is presumptively at-will, and not only because their offer letters only proposed at-will employment, but also because upon hire these Plaintiffs signed four separate documents accepting that status.  In the face of those explicit acknowledgements, Plaintiffs claim that Campaign staffers orally promised them something different – indeed, something contradictory – and assert two common law claims, one for fraudulent inducement and one for promissory estoppel, based on those alleged oral promises.  Plaintiffs' claims are barred as a matter of law and should be dismissed in full for several independent reasons.

As at-will employees, Plaintiffs could not, as a matter of law, reasonably have relied on alleged oral promises of continued employment, and therefore cannot establish an element of their promissory estoppel and fraudulent inducement claims.  Plaintiffs also do not satisfy any of the remaining elements for such claims.  In addition, the offer letters signed by Plaintiffs (which made clear their at-will status) contained an explicit no-oral-modification clause, which renders ineffective the purported oral promises upon which Plaintiffs allegedly relied.

Plaintiffs sue not only their employer, the Campaign, but also Michael Bloomberg individually.  Yet they do not allege that he personally made any promise to any of them or that Campaign staff had authority to make promises on Mr. Bloomberg's behalf that contradict the explicit language of their offer letters and other employment documents.  Plaintiffs' claims against

Mr. Bloomberg therefore should be dismissed as well.

Finally, in the unlikely event that the FAC survives this motion to dismiss, Plaintiffs' class allegations should be stricken because it is clear from the face of the FAC that Plaintiffs' claims are highly individualized and not suitable for class treatment.

For these reasons, and as discussed more fully below, the First Amended Complaint should be dismissed with prejudice in its entirety and the class allegations should be stricken.[1]

## STATEMENT OF RELEVANT FACTS ALLEGED

### A.   THE CAMPAIGN HIRES PLAINTIFFS AS AT-WILL EMPLOYEES.

Michael Bloomberg announced his candidacy for President of the United States on November 24, 2019.  FAC ¶ 34.[2]  Plaintiffs were hired as field organizers for the Campaign in January and February 2020.  *Id.* ¶¶ 5-10.  As plaintiffs allege in their FAC, when they started work on the Campaign each of them signed an offer letter in which they acknowledged and agreed to the terms of their employment (the "Offer Letters").  *Id.* ¶¶ 44, 46, 93.[3]  The Offer Letters, referring to the Campaign as the "Organization," clearly stated that Plaintiffs' employment was at-will:

> The nature of your employment at the Organization is and will continue to be "at will," as defined by applicable law, meaning that either we or you may terminate your employment at any time, with or without notice and with or without cause, for any reason or for no reason.

*Id.*; Sayers Decl., Exs. A – F, at p. 1.  The Offer Letters also made clear that oral amendments were of no effect (the "no-oral-modification clause"):  "No statement varying any of the terms of this

---

[1] Because Plaintiffs have already amended their Complaint in response to the Campaign's previous motion to dismiss, *see* Dkt. No. 20, Plaintiffs claims should be fully dismissed with prejudice.  *See Panzella v. City of Newburgh*, 231 F.Supp.3d 1, 10 n.4 (S.D.N.Y. 2017) (dismissing claims with prejudice where the plaintiffs had already amended their complaint once in response to the defendant's pre-motion conference letter).

[2] A copy of the First Amended Complaint is annexed as Exhibit 1 to the accompanying Declaration of Elise M. Bloom.

[3] Copies of the Offer Letters signed by each of the Plaintiffs are attached as Exhibits A – F to the accompanying Declaration of Katherine Sayers (the "Sayers Declaration" or "Sayers Decl.").  The Court may consider the Offer Letters in conjunction with this Rule 12(b)(6) motion because Plaintiffs explicitly refer to and rely upon the Offer Letters in the FAC.  (FAC ¶¶ 44, 46, 93.)  *See, e.g., Chambers v. Time Warner, Inc.*, 282 F.3d 147, 152 (2d Cir. 2002).

offer letter shall be enforceable unless set forth in a writing signed by a duly authorized officer of the Organization." *Id.*, at p. 2.

Exhibit A to the Offer Letters, which each of the Plaintiffs signed separately, was a confidentiality agreement, which reiterated that their employment was at will:

> No Right of Continued Employment. I acknowledge and agree that nothing contained herein shall be construed as granting me any right to continued employment by the Organization, and the right of the Organization to terminate my employment at any time and for any reason, with or without cause, is specifically reserved.

Sayers Decl., Exs. A – F, at ¶ 10(c).

Plaintiffs also signed Exhibit B to their Offer Letters, an acknowledgement that they had received and read the Campaign's Code of Conduct. Sayers Decl., Exs. A – F. In the acknowledgement, Plaintiffs agreed as follows: "I acknowledge that the Code of Conduct does not create a contract of employment, nor does it alter [the] at-will nature of any employment relationship with the Organization." *Id.*

Finally, Plaintiffs acknowledged in writing receipt of the Campaign's employee handbook (the "Employee Handbook"). In that acknowledgement they again affirmed their understanding that their employment was at will. In the relevant portion of the one-page acknowledgement, the Plaintiffs represented that:

> I hereby acknowledge that I have read the Employee Handbook and will abide by its contents as a condition of my employment. If there is anything that I do not understand or have a question about, I will contact my manager or Human Resources. . . . I understand that this Employee Handbook is neither an employment contract nor an agreement guaranteeing employment and/or the provision of benefits for any specified period of time and that, absent an executed employment contract that says otherwise, either I or Organization can terminate the at-will employment relationship at any time, for any reason.

Sayers Decl., Exs. G – K, at p. 30 (emphasis added).[4]  The Employee Handbook itself provided yet another statement of the parties' employment relationship:

> **Employment Is At Will**
>
> Your employment with the Organization is "at will," which means that it is for no definite period of time, and may be terminated at any time by either you or the Organization, with or without cause, notice or procedural requirements.  Neither this Employee Handbook, nor any other Organization policy, procedure or communication, shall impose any express or implied contractual obligations on the Organization or create or grant any right to or guarantee of employment for any period.  No representative of the Organization may enter into any oral agreement to alter your at-will status or otherwise create a contractual obligation to you.  In addition, no contractual relationship, or alteration of an employee's at-will status, shall arise except to the extent explicitly set forth in a writing signed by the Organization's Treasurer or, in the absence of one, its senior-most officer (and provided further that the other requisites to a binding contractual obligation shall have been satisfied).

*Id.*, at p. 5.

On March 4, 2020, Mr. Bloomberg announced that he would no longer seek the Democratic nomination.  FAC ¶ 48.  Later that month, the Campaign terminated Plaintiffs' employment.  *Id.* ¶¶ 5-10.

### B.    MR. BLOOMBERG'S ALLEGED STATEMENTS.

After Mr. Bloomberg withdrew from the race on March 4, 2020, *Bloomberg News* published an article that same day regarding this development (the "March 4 Article").  *See* FAC ¶ 58.[5]  The March 4 Article reported that Mr. Bloomberg "has vowed to keep spending money and

---

[4] Copies of the Employee Handbook, and Plaintiffs' signed acknowledgement forms, are attached as Exhibits G – K to the Sayers Declaration.  The Court may consider these documents on this motion because Plaintiffs explicitly refer to the Campaign's employment at-will policy memorialized in the Employee Handbook (*see* FAC ¶¶ 44, 46), and their claims arise entirely from their employment relationship with the Campaign.  *See Chambers*, 282 F.3d at 152; *see also Hamzaraj v. ABM Janitorial Ne. Inc.*, No. 15-cv-2030, 2016 WL 3571387, at *1 n.2 (S.D.N.Y. June 27, 2016) (considering collective bargaining agreement that was "neither attached to nor incorporated by explicit reference into the Complaint" because plaintiff's "complaint is based entirely on his employment relationship with [Defendant], of which the CBA is an integral part"); *Berman v. Neo@Ogilvy LLC*, No. 14-cv-00523, 2014 WL 6865718, at *4 (S.D.N.Y. Aug. 15, 2014) (considering employee handbook where complaint referenced policies contained in it).

[5] *See* https://www.bloomberg.com/news/articles/2020-03-04/bloomberg-suspends-presidential-race-after-super-tuesday-losses.  *Bloomberg News* has no affiliation with the Campaign.

put the formidable infrastructure he built for his campaign in key battleground states at the service

of the nominee." *Id.*  The March 4 Article did not report the date on which Mr. Bloomberg had

spoken about this subject and did not quote him or attribute any specific words to him. *Id.*

On March 10, 2020, *The New York Times* published an article regarding the end of Mr.

Bloomberg's campaign (the "March 10 Article"). *See* FAC ¶ 41.[6]  According to the March 10

Article, "Last week, days before he exited the race, [Mr. Bloomberg] specified that he planned to

keep his 'main field offices' open, regardless of the results on Super Tuesday." *Id.*  The March 10

Article similarly did not report the date on which Mr. Bloomberg had made the statement or quote

his specific words.

### C.   THE ALLEGED INDIVIDUALIZED ORAL PROMISES.

The FAC, which is styled as a putative class action, asserts common law claims for

fraudulent inducement and promissory estoppel against the Campaign and Mr. Bloomberg

individually.  Plaintiffs' claims are premised on allegations that various Campaign staff made a

number of individualized promises to them and other field staff of continued employment through

the November 2020 general election. *Id.* ¶¶ 22-33, 117-136.  Plaintiffs bring this action on behalf

of themselves and "more than 2,000 members" of a putative class consisting of all field staff who

were terminated by the Campaign. *Id.* ¶¶ 94, 96.

## LEGAL ARGUMENT

To survive a Rule 12(b)(6) motion to dismiss for failure to state a claim, a plaintiff's

"[f]actual allegations must be enough to raise a right to relief above the speculative level," and

"enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*,

550 U.S. 544, 555, 570 (2007).  A claim is not facially plausible unless "the plaintiff pleads factual

---

[6] *See* https://www.nytimes.com/2020/03/10/us/politics/bloomberg-campaign-staff.html.

content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009).  To avoid dismissal, a complaint must offer more than "labels and conclusions," "a formulaic recitation of the elements of a cause of action," or "naked assertion[s]" devoid of "further factual enhancement."  *Twombly*, 550 U.S. at 555, 557.  Plaintiffs cannot meet this standard because they cannot overcome their at-will status, which precludes their promissory estoppel and fraudulent inducement claims as a matter of law.

## I.   ALL OF PLAINTIFFS' CLAIMS FAIL BECAUSE THEY WERE EMPLOYEES AT WILL.

As Plaintiffs concede in the FAC, each of them signed offer letters in which they expressly agreed that their employment was at will.  FAC ¶¶ 44, 46, 93.  They also agreed that the terms of their at-will agreements could not be modified except in a signed written amendment, and signed three other acknowledgements that their employment could be terminated at any time, without cause or notice.  Sayers Decl. Exs. A-K.  Plaintiffs' at-will status precludes their claims for promissory estoppel and fraudulent inducement as a matter of law, because both claims require proof of reasonable reliance, and New York law is crystal clear that an at-will employee cannot rely on oral promises of continued employment, whether made before or after employment begins.

### A.   PROMISSORY ESTOPPEL.

To state a claim for promissory estoppel under New York law, a plaintiff must allege "1) a clear and unambiguous promise; 2) reasonable and foreseeable reliance on that promise; and 3) injury to the relying party as a result of the reliance."  *Kaye v. Grossman*, 202 F.3d 611, 615 (2d Cir. 2000).  Because they were at-will employees who signed four separate documents acknowledging that their employment could be terminated at any time, Plaintiffs cannot plausibly plead reliance:  "at-will employment arrangements render[] any reliance on a representation of continuous employment unreasonable … as a matter of law."  *See Leschak v. Raiseworks, LLC*,

No. 14-cv-8072, 2016 WL 11695068, at *8 (S.D.N.Y. Mar. 7, 2016) (internal quotation omitted).

Indeed, precisely because at-will employees cannot reasonably rely on representations promising them continued employment in the future, courts routinely dismiss claims for promissory estoppel brought by at-will employees as a matter of law because it is well settled that "New York law does not recognize promissory estoppel in the employment context." *Bessemer Tr. Co. v. Branin*, 498 F. Supp. 2d 632, 639 (S.D.N.Y. 2007), *aff'd*, 618 F.3d 76 (2d Cir. 2010); *see Leschak*, 2016 WL 11695068, at *8 (granting motion to dismiss on this basis).[7]

Moreover, Plaintiffs' alleged reliance was particularly unreasonable here because of the no-oral-modification clause in the Offer Letters. That clause directly contradicted the alleged oral promises that they now claim they thought were binding. *See Dhir v. Carlyle Grp. Emp. Co.*, No. 16-cv-06378, 2017 WL 4402566, at *9 (S.D.N.Y. Sept. 29, 2017) (any reliance on alleged oral promises unreasonable as a matter of law where offer letter contained no-oral-modification clause); *Kleinberg v. Radian Grp., Inc.*, No. 01-cv-9295, 2002 WL 31422884, at *11 (S.D.N.Y. Oct. 29, 2002), *report and recommendation adopted*, 240 F. Supp. 2d 260 (S.D.N.Y. 2002) (granting motion to dismiss promissory estoppel claim; "[Plaintiff's] reliance on the purported promises was unreasonable in light of the … no oral modification clause[]"). Plaintiffs' promissory estoppel claim fails as a matter of law and must be dismissed.

**B.    FRAUDULENT INDUCEMENT.**

Plaintiffs' fraudulent inducement claim must be dismissed for the same reason:  an individual cannot be fraudulently induced into at-will employment with a collateral promise of something more secure because "reliance on a future promise of employment by an at-will

---

[7] *See also Andrews v. Sotheby Int'l Realty, Inc.*, No. 12-cv-8824, 2014 WL 626968, at *10 (S.D.N.Y. Feb. 18, 2014), *aff'd*, 586 F. App'x 76 (2d Cir. 2014) (same); *Allison v. Clos-ette Too, LLC*, No. 14-cv-1618, 2014 WL 4996358, at *9 (S.D.N.Y. Sept. 15, 2014), *report and recommendation adopted*, 2014 WL 5002099 (S.D.N.Y. Oct. 7, 2014) (same); *Ashmore v. CGI Grp. Inc.*, No. 11-cv-8611, 2012 WL 2148899, at *7 (S.D.N.Y. June 12, 2012) (same).

employee is unreasonable as a matter of law."[8]  *See Downey v. Adloox Inc.*, 238 F. Supp. 3d 514, 525 (S.D.N.Y. 2017) (granting motion to dismiss fraudulent inducement claim); *Brady v. Calyon Sec. (USA)*, 406 F. Supp. 2d 307, 316-17 (S.D.N.Y. 2005) (granting motion to dismiss; "Because an at-will employee may be terminated at any time, any reliance on any representations of future intentions, such as job security … is deemed unreasonable as a matter of law."); *Meyercord v. Curry*, 38 A.D.3d 315, 316 (1st Dep't 2007) (reversing denial of motion to dismiss fraudulent inducement claim brought by at-will employee); *Berger v. Roosevelt Inv. Grp. Inc.*, 28 A.D.3d 345, 346 (1st Dep't 2006) (affirming grant of motion to dismiss fraudulent inducement claim brought by at-will employee).

Plaintiffs' allegation that the Campaign "made false or misleading statements" regarding the at-will language in the Offer Letters, *see* FAC ¶ 46, does not save their fraudulent inducement claim; such claims cannot stand as a matter of law even if the employer expressly assures the employee that the at-will term will not be enforced.  For example, in *Wurtsbaugh v. Banc of America Securities LLC*, No. 05-cv-6220, 2006 WL 1683416 (S.D.N.Y. June 20, 2006), the plaintiff alleged—just as one of the Plaintiffs alleges here—that he was told that his "classification as an at-will employee was merely a formality and that his employment [] would not be at jeopardy during the term of the Agreement." *Id.*, at *7.  The Court granted the defendant's motion to dismiss the fraudulent inducement claim, holding that because "[Plaintiff]'s employment contract defined his status as that of an at-will employee[,] [a]ny reliance on oral representations about the term of his employment was therefore unreasonable under New York law." *Id.*

So too here.  Because Plaintiffs repeatedly acknowledged and agreed in the Offer Letters

---

[8]  To state a claim for fraudulent inducement under New York law, a plaintiff must allege "(i) a material misrepresentation of a presently existing or past fact; (ii) an intent to deceive; (iii) reasonable reliance on the misrepresentation by [the plaintiff]; and (iv) resulting damages." *Ipcon Collections LLC v. Costco Wholesale Corp.*, 698 F.3d 58, 62 (2d Cir. 2012).

that their employment was "at will" and could be terminated "at any time, with or without notice and with or without cause, for any reason or for no reason" (Sayers Decl., Exs. A – F at pp. 1, 7, 12), acknowledged in the same agreement that any changes had to be in writing, *see id.*, and reiterated this understanding when they acknowledged the Employee Handbook (*id.*, Exs. G – K at pp. 5, 30), any reliance on an alleged promise of continued employment through the general election in November 2020 was unreasonable as a matter of law.

## II.   THE PROMISSORY ESTOPPEL CLAIM ALSO FAILS FOR FAILURE TO PLEAD AN UNCONSCIONABLE INJURY.

Plaintiffs' promissory estoppel claims fail not only because of their legal inability to satisfy the reliance element of such claims, as explained in Part I, above, but also because "promissory estoppel is a narrow doctrine typically applied only when the plaintiff has suffered an 'unconscionable injury' or when otherwise 'necessary to avoid injustice.'"   *Dhir*, 2017 WL 4402566, at *9 (citation omitted).  The "unconscionable injury" requirement applies here because Plaintiffs' claims of an oral contract for a fixed term of employment otherwise would be barred by the Statute of Frauds.

### A.   THE STATUTE OF FRAUDS PRECLUDES ANY CLAIM OF AN ORAL AGREEMENT TO EMPLOY PLAINTIFFS FOR A FIXED TERM.

Plaintiffs do not assert a claim for breach of contract, and cannot do so, because it would be barred by New York's Statute of Frauds.  *See* N.Y. Gen. Obl. Law § 15-301(1) ("A written agreement or other written instrument which contains a provision to the effect that it cannot be changed orally, cannot be changed by an executory agreement unless such executory agreement is in writing and signed by the party against whom enforcement of the change is sought or by his agent.").  Pursuant to this statute, when an employee signs an offer letter containing a no-oral modification clause, any alleged oral promise to modify the terms of the offer letter are ineffective. *See Baraliu v. Vinya Capital, L.P.*, 765 F. Supp. 2d 289, 297 (S.D.N.Y. 2011) ("Since the original

[offer letter] … contains a no-oral-modification clause, the New York Statute of Frauds … applies.").  This rule applies equally to purported oral promises to modify the at-will nature of an employee's employment.  *See Gootee v. Global Credit Servs., LLC*, 139 A.D.3d 551, 553 (1st Dep't 2016) ("the no oral modification clause is an enforceable contract term even if the employment was at will").

Here, the alleged promises on which Plaintiffs say they relied all were oral.  The FAC neither attaches nor even mentions any written promise, let alone a written promise "signed by the party against whom enforcement" is sought (*i.e.*, Defendants), as required by the Statute of Frauds. Since the Offer Letters signed by Plaintiffs contain a clause prohibiting oral modifications, Plaintiffs' promissory estoppel claims, which are premised entirely on alleged oral promises that are inconsistent with the terms of the Offer Letters, are barred by the Statute of Frauds.

That is why Plaintiffs plead a claim for promissory estoppel instead:  because that doctrine (where it applies) permits enforcement of an alleged promise that otherwise would be barred by the Statute of Frauds.  But Plaintiffs can only use the doctrine to avoid the Statute if they can prove "unconscionable injury."  *Pearce v. Manhattan Ensemble Theater, Inc.*, 528 F. Supp. 2d 175, 181 (S.D.N.Y. 2007) (collecting cases); *see also ABA Refinery Corp. v. Republic Metals Ref. Corp.*, No. 15–cv-8731, 2017 WL 4481170, at *5 (S.D.N.Y. Oct. 5, 2017) ("When promissory estoppel is employed to overcome the statute of frauds, the doctrine only applies 'in those rare cases where the circumstances [are] such as to render it *unconscionable* to deny the oral promise upon which the promisee has relied.'") (citation omitted).  Indeed, "[i]t is proper to dismiss the [promissory estoppel] cause of action due to lack of an unconscionable injury on the pleadings alone."  *CMC Transaction Servs., LLC v. IDEX Corp.*, No. 18-cv-4925, 2019 WL 3496643, at *5 (S.D.N.Y. Aug. 1, 2019).  As shown in the following section, Plaintiffs cannot meet that demanding requirement.

### B.   PLAINTIFFS CANNOT ESTABLISH AN UNCONSCIONABLE INJURY.

The doctrine described above requires Plaintiffs to allege a missed opportunity "so valuable that injury of unconscionable proportions would flow from the failure to enforce the oral contract." *Baguer v. Spanish Broad. Sys., Inc.*, No. 04-cv-8393, 2007 WL 2780390, at *6 (S.D.N.Y. Sept. 20, 2007) (citation omitted).

Here, Plaintiffs allege that they suffered damages because they relocated and "left their jobs to accept positions as field staffers for Mike Bloomberg 2020 and/or did not pursue other offers of employment or postponed educational opportunities in order to accept such positions as field staffers." FAC ¶ 123. More specifically, Alexis Sklair alleges that she relocated from South Carolina to Georgia and that she declined offers to work for a state senate campaign and for another presidential campaign. FAC ¶¶ 13, 67. Sterling Rettke alleges that he decided to postpone applying for law school. *Id.* ¶¶ 14, 69. Nathaniel Brown alleges that he relocated from Nevada to Utah and "dropped out of the advanced stages of the hiring process for a job as an organizer with the Democratic Congressional Campaign Committee." *Id.* ¶¶ 15, 68. Brian Giles alleges that he left his job at Mid-State Truck Service, Inc. and turned down a position with the Wisconsin Democratic Party. *Id.* ¶¶ 16, 70. Jocelyn Reynolds alleges that she turned down a job with FBI Buildings. *Id.* ¶¶ 17, 71. Caryn Austen alleges that she left her job at Nestlé. *Id.* ¶¶ 18, 72. All of the Plaintiffs allege that they are currently employed, but are earning less than they earned when working for the Campaign. *Id.* ¶¶ 73-78.

These allegations, even if credited as true for purposes of this motion, do not establish an unconscionable injury. "It is well-settled that 'change of job or residence, by itself, is insufficient to trigger invocation of the promissory estoppel doctrine.'" *Stillman v. Townsend*, No. 05-cv-6612, 2006 WL 2067035, at *5 (S.D.N.Y. July 26, 2006) (granting motion to dismiss); *see also Cohen v. Avanade, Inc.*, 874 F. Supp. 2d 315, 322 (S.D.N.Y. 2012) (same); *Baguer*, 2007 WL

2780390, at *6 (same); *Rivera v. City of N.Y.*, 392 F. Supp. 2d 644, 657 (S.D.N.Y. 2005) (same); *Fishoff v. Coty Inc.*, 676 F. Supp. 2d 209, 219 (S.D.N.Y. 2009), *aff'd*, 634 F.3d 647 (2d Cir. 2011) (granting motion to dismiss; "Under New York law, the failure to switch employers does not create a promissory estoppel claim unless the plaintiff can show that unconscionable injury would result absent enforcement of the defendant's promise."); *George v. Thomas*, No. 19-cv-3020, 2020 WL 1643486, at *3 (E.D.N.Y. Mar. 31, 2020) (granting motion to dismiss for lack of unconscionable injury where plaintiff alleged that defendant persuaded him to close his business and move to the United States from Singapore causing hundreds of thousands of dollars in damages due to lost income he otherwise would have earned); *Dalton v. Union Bank of Switzerland*, 134 A.D.2d 174, 176 (1st Dep't 1987) (affirming order granting motion to dismiss; "The fact that defendant promised plaintiff employment at a certain salary with certain other benefits, which induced him to leave his former job and forego the possibility of other employment in order to remain with defendant, does not create a cause of action for promissory estoppel.").

## III.   PLAINTIFFS DO NOT ADEQUATELY ALLEGE THE REMAINING ELEMENTS OF FRAUDULENT INDUCEMENT.

Plaintiffs also fail to establish the remaining elements of their fraudulent inducement claims:  they do not allege a misrepresentation of a presently existing fact, an intent to deceive, or any concrete injury.  *Ipcon Collections LLC*, 698 F.3d at 62.

### A.   PLAINTIFFS DO NOT ALLEGE A MISREPRESENTATION OF PRESENT FACT.

A fraudulent inducement claim requires a "misrepresentation of a present, material existing fact."  *MCI Worldcom Commc'ns, Inc. v. N. Am. Commc'ns Control, Inc.*, No. 98-cv-6818, 2003 WL 21279446, at *10 (S.D.N.Y. June 4, 2003) (granting motion to dismiss fraudulent inducement claim where plaintiffs failed to allege a misrepresentation of a present fact); *see also Downey*, 238 F. Supp. 3d at 525 ("the false representation must be one 'of present fact' rather than a future

promise, [] because breach of a future promise sounds in contract"). Consistent with that rule, and as dispositive here, "'claims of fraudulent inducement based on future promises of continued employment in an at-will employment context are not cognizable' under New York law." *Id.*; *see also Deluca v. Bank of Tokyo-Mitsubishi UFJ, Ltd.*, No. 06-cv-5474, 2008 WL 857492, at \*16 (S.D.N.Y. Mar. 31, 2008) (same); *Brady v. Calyon Sec. (USA)*, 406 F. Supp. 2d 307, 316 (S.D.N.Y. 2005) (same).

Plaintiffs allege nothing more than such a promise about the future: that they would remain employed through November 2020 to work both on the primary election and on the general election, regardless of whether Mr. Bloomberg won the Democratic nomination. *See* FAC ¶¶ 117, 126. Because the alleged misrepresentations described in the FAC concern only a purported promise of continued employment in the future, and do not concern any present existing facts, Plaintiffs cannot establish the first element of a fraudulent inducement claim.

### B.   PLAINTIFFS DO NOT ALLEGE AN INTENT TO DECEIVE.

Under Rule 9(b)'s heightened pleading standard, Plaintiffs must "allege facts giving rise to a *strong inference* of fraudulent intent." *Cloke-Browne v. Bank of Tokyo-Mitsubishi UFJ, Ltd.*, No. 10-cv-2249, 2011 WL 666187, at \*5 (S.D.N.Y. Feb. 9, 2011) (emphasis added) (granting motion to dismiss fraudulent inducement claim). "The requisite 'strong inference' of fraud may be established either (a) by alleging facts to show that defendants had both motive and opportunity to commit fraud, or (b) by alleging facts that constitute strong circumstantial evidence of conscious misbehavior or recklessness." *Shields v. Citytrust Bancorp, Inc.*, 25 F.3d 1124, 1128 (2d Cir. 1994); *see also Wexler v. Allegion (UK) Ltd.*, No. 16-cv-2252, 2018 WL 1626346, at \*7 (S.D.N.Y. Mar. 30, 2018) ("To qualify as 'strong,' an inference of fraud must be more than merely 'reasonable' or 'permissible'—it must be cogent and compelling, thus strong in light of the other explanations.") (citation omitted).

Here, Plaintiffs rely entirely on the suggestion that the Campaign's late start provided a motive to speed up hiring by making false promises.  *See* FAC ¶ 42.  But even if they could prove that promises were made, a need to build staff quickly does not permit a "strong inference" that the Campaign knew *at the time* that it would terminate the field staff's employment before November 2020.  To the contrary, even taking Plaintiffs' allegations as true, they are equally compatible with the opposite inference:  that the Campaign made offers in a good faith effort to win the Democratic nomination, and only later decided to terminate employment after considering the election results on Super Tuesday and re-assessing the best way to assist the party going forward.  *See Deluca v. Bank of Tokyo-Mitsubishi UFJ, Ltd.*, No. 06-cv-5474, 2008 WL 857492, at *16 (S.D.N.Y. Mar. 31, 2008) (granting motion to dismiss; "Beyond conclusory allegations, the plaintiff has adduced no evidence to show that Mr. Yasuda's alleged promises were false *and known to be false when made*.") (emphasis added).  Thus, Plaintiffs fail to support the "strong inference" of scienter necessary to state a claim for fraud.[9]

### C.   PLAINTIFFS DO NOT ALLEGE ANY NON-SPECULATIVE INJURY.

Plaintiffs' fraudulent inducement claims also fail because most of them do not allege a legally cognizable injury.[10]  In order to establish the damages element of a fraudulent inducement claim, Plaintiffs must satisfy the "out-of-pocket" rule, which provides that "[d]amages are to be calculated to compensate plaintiffs for what they lost because of the fraud, not to compensate them for what they might have gained."  *Connaughton v. Chipotle Mexican Grill, Inc.*, 29 N.Y.3d 137,

---

[9] The only other allegation in the FAC regarding Defendants' motive to deceive is the entirely conclusory allegation, based upon "information and belief," that the alleged representations were "known to the defendants as false at the time they were made."  FAC ¶¶ 119, 129.  This is precisely the type of circular, conclusory allegation of scienter that Rule 9(b) precludes.  *See Shaoxing Daqin Imp. & Exp. Co. v. Notations, Inc.*, No. 19-cv-2732, 2019 WL 6498397, at *6 (S.D.N.Y. Dec. 3, 2019) ("[M]ere failure of promised performance has never permitted a factual finding that defendants never intended to perform.") (citation omitted).

[10] As described below, only two of the six Plaintiffs allege a concrete injury.

142 (2017) (citing *Lama Holding Co. v. Smith Barney Inc.*, 88 N.Y.2d 413, 421 (1996)).  Under this rule, a plaintiff must "plead that he had something of value, was defrauded by [defendant] into relinquishing it for something of lesser value, and that the difference between the two constituted [plaintiff]'s pecuniary loss." *Rather v. CBS Corp.*, 68 A.D.3d 49, 58 (1st Dep't 2009).  The "out-of-pocket" rule "has been widely applied to fraudulent inducement claims in the employment context to preclude expectation damages, *i.e.*, the type of income [plaintiff] claims he would have earned had he accepted alternative employment with [another employer]." *Pasternak v. Dow Kim*, 961 F. Supp. 2d 593, 596 (S.D.N.Y. 2013).

Here, most of the Plaintiffs do not allege that they were employed elsewhere or that they otherwise relinquished "something of value" when they accepted employment with the Campaign. To the contrary, Alexis Sklair alleges that she joined the Campaign from Cory Booker's presidential campaign after Senator Booker dropped out of the race.  FAC ¶ 13.  Sterling Rettke alleges that he had recently graduated from college and was planning to apply to law school when he joined the Campaign.  FAC ¶ 14.  Nathaniel Brown alleges that he joined the Campaign from Kamala Harris's campaign after Senator Harris dropped out of the race.  FAC ¶ 15.  Jocelyn Reynolds does not allege that she was employed at all when she joined the Campaign.  FAC ¶ 17.

To the extent Plaintiffs allege that they "forewent other work opportunities or educational plans" to join the Campaign (FAC ¶ 83), any purported damages arising from those purported forgone opportunities are too undeterminable and speculative as a matter of law to support a fraudulent inducement claim.  *See Rather*, 68 A.D.3d at 58 (rejecting plaintiff's "claim that, but for [defendant's] fraud, he could have had more remunerative employment"); *Hoeffner v. Orrick, Herrington & Sutcliffe LLP*, 61 A.D.3d 614, 615 (1st Dep't 2009) (plaintiff's "damages may not include any amount based on continued employment with the other firm, since the duration and

success of his career with that firm are speculative"); *Geary v. Hunton & Williams*, 257 A.D.2d 482, 482 (1st Dep't 1999) (holding that out-of-pocket rule "bars recovery of profits that would have been realized in the absence of fraud, including the loss of an alternative bargain overlooked in favor of the fraudulent one, as inherently speculative and undeterminable").[11]

## IV.    PLAINTIFFS CANNOT STATE A CLAIM AGAINST MR. BLOOMBERG INDIVIDUALLY.

To the extent that Plaintiffs seek to assert their promissory estoppel and fraudulent inducement claims against Mr. Bloomberg individually, those claims also fail, not only because any reliance was unreasonable as a matter of law, as described above in Point I, but also because Plaintiffs do not allege that Mr. Bloomberg misrepresented any facts or made any specific promises to them individually, or that Mr. Bloomberg authorized any Campaign staff to make promises on his behalf, which is fatal to their claims.

### A.    PLAINTIFFS DO NOT ALLEGE ANY CLEAR AND UNAMBIGUOUS PROMISE BY MR. BLOOMBERG.

Plaintiffs' promissory estoppel claim against Michael Bloomberg individually must also be dismissed because the Plaintiffs do not allege the first element of that claim: a "clear and unambiguous promise" by him. The only specific statements attributed directly to Mr. Bloomberg in the FAC are the two quotes in the March 4 Article and the March 10 Article, respectively, which were published *after* Mr. Bloomberg withdrew from the race. *See* FAC ¶¶ 41, 58. Plaintiffs could not have relied on statements first reported after the end of the campaign was announced.

Moreover, and in any event, nothing in these statements reasonably could be construed as a promise by Mr. Bloomberg that any particular individual would be guaranteed employment by

---

[11] Similarly, to the extent the FAC can be construed as seeking lost wages and benefits due to the termination of Plaintiffs' at-will employment, such damages are not recoverable in connection with their fraudulent inducement claims. *See, e.g.*, *Smalley v. Dreyfus Corp.*, 10 N.Y.3d 55, 59 (2008); *Kinsella v. Powerguard Specialty Ins. Servs., LLC*, 112 A.D.3d 414, 415 (1st Dep't 2013).

the Campaign or another entity established or funded by him.  The March 4 Article noted that Mr. Bloomberg had "vowed to keep spending money and put the formidable infrastructure he built for his campaign in key battleground states at the service of the nominee," but said nothing about employing anyone.  *See* FAC ¶ 58.  And the quote attributed to Mr. Bloomberg in the March 10 Article *contradicts* Plaintiffs' claim that every single field staffer was guaranteed a job through November; Mr. Bloomberg was reported to have said only that he planned to keep his "main field offices" open, but he did not state that even that subset of offices would remain open through any particular date or that any particular individual would be guaranteed a job.  *See* FAC ¶ 41.

Plaintiffs' reliance on generalized statements reported in the press regarding the Campaign's purported expectation that activities would continue through the general election in November 2020 cannot satisfy the first element of promissory estoppel, as none of those statements constitute a "clear and unambiguous promise" by Mr. Bloomberg that any particular individual would be guaranteed to be part of that effort.  *See Sang Lan v. Time Warner, Inc.*, No. 11-cv-2870, 2013 WL 1703584, at *4-6 (S.D.N.Y. Apr. 19, 2013) (granting motion to dismiss promissory estoppel claim based on public statements reported in the press because those statements "did not constitute a clear and unambiguous promise"); *see also Bd. of Trustees ex rel. Gen. Ret. Sys. of Detroit v. BNY Mellon, N.A.*, No. 11-cv-6345, 2012 WL 3930112, at *6 (S.D.N.Y. Sept. 10, 2012) ("A promise that is too vague or too indefinite is not actionable under a theory of promissory estoppel."); *Landtek Grp., Inc. v. N. Am. Specialty Flooring, Inc.*, No. 14-cv-1095, 2016 WL 11264722, at *39 (E.D.N.Y. Aug. 12, 2016) (dismissing promissory estoppel claim where plaintiff "fail[ed] to point to any specific statements … that could be construed as the type of explicit promise necessary to support a promissory estoppel claim").

**B.**   **PLAINTIFFS' ALLEGATIONS AS TO MR. BLOOMBERG FAIL TO SATISFY THE HEIGHTENED PLEADING STANDARD FOR FRAUD CLAIMS.**

Plaintiffs' fraudulent inducement claim against Mr. Bloomberg individually must also be dismissed because the FAC fails to satisfy the heightened pleading standard applicable to such claims under Rule 9(b), which requires a party alleging fraud to "state with particularity the circumstances constituting fraud ...." Fed. R. Civ. P. 9(b).  To satisfy that standard, a complaint must "allege facts giving rise to a *strong inference* of fraudulent intent." *Cloke-Browne*, 2011 WL 666187, at *5 (emphasis added).  More specifically, it "must: (1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Id.*; *see also Eternity Global Master Fund Ltd. v. Morgan Guar. Tr. Co. of N.Y.*, 375 F.3d 168, 187 (2d Cir. 2004) (same). "[W]here there are multiple defendants, each defendant must be provided with specific information alleging his or her individual participation in the 'fraudulent conduct.'" *Canelle v. Russian Tea Room Realty LLC.*, No. 01-cv-0616, 2002 WL 287750, at *5 (S.D.N.Y. Feb. 27, 2002).

Here, the FAC purports to identify those who made promises of employment to Plaintiffs. *See* FAC ¶¶ 22-33.  Significantly, Mr. Bloomberg is *not* identified.  Plaintiffs fail entirely to identify the *content* of any allegedly false statements made by Mr. Bloomberg, *when* or *where* such statements were purportedly made, or any facts whatsoever to suggest fraudulent intent.  *See supra* Point III.B.  The only specific statements attributed directly to Mr. Bloomberg in the FAC are those referenced in the March 4 Article and the March 10 Article, respectively, which, as discussed in the previous section, could not be construed as a promise that any particular individual would be guaranteed employment.  *See Canelle*, 2002 WL 287750, at *5 (granting motion to dismiss fraudulent inducement claim against individual defendant where plaintiff "provided virtually no details as to where and when the statements were made and how they are fraudulent").

18

### C.   PLAINTIFFS DO NOT ALLEGE THAT MR. BLOOMBERG AUTHORIZED CAMPAIGN STAFF TO MAKE PROMISES ON HIS BEHALF.

Plaintiffs' failure to allege that Mr. Bloomberg personally misrepresented any facts or made any specific promises to them individually requires dismissal of Plaintiffs' claims as to him. Plaintiffs cannot avoid this fatal flaw in their claims through their conclusory allegation that Campaign staff had "express, implied, or apparent authority" to make promises as agents on Mr. Bloomberg's behalf.  FAC ¶ 19.  Under New York law, "an agent has actual authority if the principal has granted the agent the power to enter into contracts on the principal's behalf, subject to whatever limitations the principal places on this power, either explicitly or implicitly." *Highland Capital Mgmt. LP v. Schneider*, 607 F.3d 322, 327 (2d Cir. 2010).  The FAC alleges no facts demonstrating that Mr. Bloomberg granted any Campaign employees such authority.  And Plaintiffs cannot assert that Campaign staff had apparent authority to make oral promises, because apparent authority can only exist "if the principal has created the appearance of authority, leading the other contracting party to reasonably believe that actual authority exists."  *Highland Capital*, 607 F.3d at 328.  "Apparent authority can only be created by the words or conduct of the principal addressed directly to the relying third party; what the purported agent says to or does vis-a-vis the third party is of no relevance."  *4C Foods Corp. v. Package Automation Co.*, No. 14-cv-2212, 2014 WL 6602535, at *6 (S.D.N.Y. Nov. 18, 2014).

Thus, even if Campaign employees had suggested to Plaintiffs that they had the authority to make binding promises on behalf of Mr. Bloomberg personally, the claims against Mr. Bloomberg individually must be dismissed because Plaintiffs do not allege that *Mr. Bloomberg* ever affirmatively communicated directly to them that Campaign staff had any such authority. Indeed, in *4C Foods*, the court granted a motion to dismiss a breach of contract claim where the plaintiff failed to plead, as Plaintiffs fail to plead here, "a single non-conclusory allegation"

demonstrating that the principal cloaked the purported agent with apparent authority to enter into agreements on its behalf. *See 4C Foods*, 2014 WL 6602535, at \*6; *see also Ball v. N.Y.C. Council*, No. 17-cv-4828, 2018 WL 4625625, at \*5 (S.D.N.Y. Sept. 26, 2018) ("[W]here a plaintiff fails to allege facts from which a plausible inference of apparent authority can be drawn, a court may resolve the issue as a matter of law."); *RSM Prod. Corp. v. Fridman*, 643 F. Supp. 2d 382, 408 (S.D.N.Y.2009) ("[C]onclusory allegations regarding [an] agency relationship ... are not sufficient to survive a motion to dismiss."); *Cannon v. Douglas Elliman, LLC*, No. 06-cv-7092, 2007 WL 4358456, at \*5 (S.D.N.Y. Dec. 10, 2007) (dismissing a complaint where plaintiffs alleged "the defendants acted 'as agents for each other,' ... but offer[ed] no facts from which inferences of actual or apparent authority [could] be drawn").

The claims asserted against Mr. Bloomberg here should be dismissed for the same reason.

## V.    PLAINTIFFS' CLASS ALLEGATIONS SHOULD BE STRICKEN.

As set forth above, the FAC should be dismissed in its entirety.  However, in the unlikely event that the FAC survives this motion to dismiss, Plaintiffs' class allegations should be stricken because their claims cannot be resolved on a representative basis.  The Campaign's liability to each putative class member turns entirely on the specific facts relevant to each of them.

### A.    THE COURT MAY STRIKE CLASS ALLEGATIONS AT THE PLEADING STAGE.

Rule 23, the rule governing class actions, authorizes the Court to strike class allegations. *See* Fed. R. Civ. P. 23(d)(1)(D) ("In conducting an action under this rule, the court may issue orders that [] require that the pleadings be amended to eliminate allegations about representation of absent persons.").  "Although class certification typically occurs at a later stage of the proceedings, [a] motion to strike class allegations is procedurally permissible at the pleading stage." *Davis v. Navient Corp.*, No. 17-cv-00992, 2018 WL 1603871, at \*4 (W.D.N.Y. Mar. 12, 2018), *report and recommendation adopted*, 2019 WL 360173 (W.D.N.Y. Jan. 29, 2019) (internal

quotations omitted) (granting motion to strike class allegations); *see also Maddison v. Comfort Sys. USA (Syracuse), Inc.*, No. 17-cv-0359, 2018 WL 679477, at *7 (N.D.N.Y. Feb. 1, 2018) ("A defendant may move to strike class claims before a plaintiff moves to certify the class."); *Murdock-Alexander v. Tempsnow Emp't & Placement Servs., LLC*, No. 16-cv-5182, 2016 WL 6833961, at *3 (N.D. Ill. Nov. 21, 2016) ("The interplay of Rules 12(f), 23(c)(1)(A), and 23(d)(1)(D) empowers the Court to dismiss or strike class allegations at the pleading stage.").

The Campaign recognizes that, ordinarily, motions to strike class allegations are disfavored as premature where a plaintiff has not had an opportunity to conduct discovery.  *Maddison*, 2018 WL 679477, at *7.  But where, as here, "from the face of the complaint … it would be impossible to certify the alleged class regardless of the facts the plaintiffs may be able to obtain during discovery," courts may strike class allegations.  *Id.* (internal citations and alterations omitted); *see also Santiago v. Merriman River Assocs., LLC*, No. 17-cv-2054, 2018 WL 2465358, at *7 (D. Conn. June 1, 2018) ("A court may … exercise its discretion to strike parts of a class allegation at the motion-to-dismiss stage if those claims could not be maintained as a matter of law.").

### B.   THE HIGHLY INDIVIDUALIZED INQUIRIES NECESSARY TO PROVE PLAINTIFFS' CLAIMS PRECLUDE CLASS TREATMENT.

Rule 23(a) contains four requirements for class certification:  numerosity, commonality, typicality and adequacy.  With regard to the commonality requirement, Rule 23(a)(2) requires that Plaintiffs' alleged common law claims are capable of being resolved class-wide "in one stroke." *Kassman v. KPMG LLP*, 416 F. Supp. 3d 252, 274 (S.D.N.Y. 2018) (citing *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 349 (2011)).  In addition to the requirements for certification in Rule 23(a), Plaintiffs must also satisfy the requirements of Rule 23(b)(1), (2), or (3).  Class certification thus is only proper if Plaintiffs meet their burden to show not only that common questions will predominate over the individual questions raised by each putative class member's claims, but also

that class treatment is superior to individual litigation.  Fed. R. Civ. P. 23(b)(3).  The Supreme

Court and the Second Circuit have cautioned that Rule 23(b)(3)'s predominance requirement is

"far more demanding" than Rule 23(a)'s commonality requirement.  *See Amchem Prods., Inc. v.*

*Windsor*, 521 U.S. 591, 623-24 (1997); *In re Petrobras Sec.*, 862 F.3d 250, 270 (2d Cir. 2017).

Here, Plaintiffs' class allegations cannot satisfy Rules 23(a) and 23(b) because proving

each of the elements of Plaintiffs' promissory estoppel and fraudulent inducement claims would

require highly individualized inquiries.

        **1.**      ***Plaintiffs' Claims Require Individualized Inquiries Into The Substance Of Their Communications With The Campaign.***

As an initial matter, proving that the Campaign made a clear and unambiguous promise

(the first element of promissory estoppel), or material misrepresentations of present fact (the first

element of fraudulent inducement), would require inquiries into each putative class member's

individualized communications with the Campaign.  *See Moore v. PaineWebber, Inc.*, 306 F.3d

1247, 1253 (2d Cir. 2002) (affirming denial of plaintiffs' class certification motion; "to recover

for a defendant's fraudulent conduct, even if that fraud is the result of a common course of conduct,

each plaintiff must prove that he or she personally received a material misrepresentation"); *Davis*,

2018 WL 1603871, at \*7 (granting motion to strike class allegations in part due to need for

individualized analysis of the putative class members' communications with the defendant); *Jones*

*v. Am. Gen. Life & Accident Ins. Co.*, 213 F.R.D. 689, 702 (S.D. Ga. 2002) (denying class

certification for a promissory estoppel claim because to establish a promise, "each class member

would be relying on representations made to him or her and no one else").

        **2.**      ***Plaintiffs' Claims Require Individualized Inquiries Into Plaintiffs' State Of Mind.***

Even if (contrary to the actual facts) each and every putative class member had received a

firm promise of guaranteed employment through November 2020, proving that Plaintiffs

reasonably relied on the representations—an essential element of Plaintiffs' promissory estoppel and fraudulent inducement claims (*see supra* Point I)—would require the Court to examine each putative class member's state of mind.

In *Luedke v. Delta Airlines, Inc.*, former employees of Pan Am brought promissory estoppel and other claims against Delta Airlines premised on alleged assurances by Delta that it would provide financial assistance to Pan Am and assure continued employment with the airline as it reorganized in bankruptcy.  *Luedke*, 155 B.R. 327, 328 (S.D.N.Y. 1993).  Just as Plaintiffs allege here, *see* FAC ¶ 83, the plaintiffs in *Luedke* alleged that they declined to pursue other employment opportunities and relocated in reliance on Delta's representations.  *Id*. at 328-29.  The court denied plaintiffs' motion for class certification, explaining that the "task of evaluating the reasonableness of each claimant's belief that he or she was promised employment and could rely on such a promise has the potential to embroil the Court in thousands of fact-finding inquiries." *Id*. at 330.  Here, although the Court should conclude that any reliance by Plaintiffs on purported promises of continued employment was unreasonable as a matter of law in light of their at-will status, *see supra* Point I, in the event that the Court determines that it needs to evaluate the reasonableness of each proposed class member's reliance, it could not conduct that analysis without engaging in "thousands of fact-finding inquiries." *Luedke*, 155 B.R. at 330.

For this reason, multiple other courts have similarly held that claims of promissory estoppel or fraud that include an element of reasonable reliance are not susceptible to class treatment.  *See, e.g.*, *Sprague v. Gen. Motors Corp.*, 133 F.3d 388, 398 (6th Cir. 1998) (holding that "estoppel claims are typically inappropriate for class treatment" because they require individualized "proof of what statements were made to a particular person, how the person interpreted those statements, and whether the person justifiably relied on the statements to his detriment"); *Broussard v.*

*Meineke Discount Muffler Shops, Inc.*, 155 F.3d 331, 341 (4th Cir. 1998) (recognizing that reliance element of fraud claim is not readily susceptible to class-wide proof); *Walney v. SWEPI LP*, No. 13-cv-102, 2015 WL 5333541, at *22 (W.D. Pa. Sept. 14, 2015) (holding promissory estoppel and fraud claims are not suitable for class-wide resolution in light of the individualized proof required to establish reasonable reliance); *Reynolds v. BLM Co., Inc.*, No. 12-cv-1105, 2014 WL 12888364, at *3 (W.D. Ark. Mar. 17, 2014) (denying class certification motion; "Without question, claims for promissory estoppel would require the consideration of individual evidence regarding reliance, which would overwhelm any common questions of law or fact presented by class claims.").[12]

### 3. *Plaintiffs' Claims Require Individualized Inquiries Into Plaintiffs' Alleged Injuries.*

Likewise, proving the "injury" element of Plaintiffs' promissory estoppel and fraudulent inducement claims would also require highly individualized inquiries into each putative class member's specific circumstances, including any other opportunities they gave up to join the Campaign. *See Salon Fad v. L'Oreal USA, Inc.*, No. 10-cv-5063, 2011 WL 4089902, at *11 (S.D.N.Y. Sept. 14, 2011) (denying class certification because plaintiffs "failed to demonstrate that the alleged injury … is susceptible of class-wide proof"); *In re Rail Freight Fuel Surcharge Antitrust Litig.-MDL No. 1869*, 725 F.3d 244, 253 (D.C. Cir. 2013) ("When a case turns on individualized proof of injury, separate trials are in order."); *Hudson v. Delta Air Lines, Inc.*, 90 F.3d 451, 457 (11th Cir. 1996) ("Even if the plaintiffs are able to prove that Delta disseminated a

---

[12] *See also Sateriale v. RJ Reynolds Tobacco Co.*, No. 09-cv-08394, 2014 WL 7338877, at *12 (C.D. Cal. Dec. 19, 2014) (denying class certification for promissory estoppel claim because determining reliance requires an inquiry into each class member's state of mind); *Yarger v. ING Bank, FSB*, 285 F.R.D. 308, 328-29 (D. Del. 2012) (denying class certification for fraud and promissory estoppel claims because, despite a common "promise" to all plaintiffs, "reliance will need to be proven on an individual class member basis" and analyzing reliance would "entail complicated mini-litigations focusing on the individual class members' knowledge and state of mind"); *Rowell v. Voortman Cookies, Ltd.*, No. 02-C-0681, 2005 WL 1026715, at *2 (N.D. Ill. Apr. 27, 2005) (denying class certification of promissory estoppel claims due to individual inquiries into question of reasonable reliance); *Thompson v. Cmty. Ins. Co.*, 213 F.R.D. 284, 296 n.8 (S.D. Ohio 2002) ("claims of fraud and promissory estoppel are generally inappropriate for class treatment, because of the need to provide individualized evidence of reliance").

false and uniform message to all potential retirees that no such plan was in the works at the time they made their decision to retire, they would also have to show that all members of the class would have deferred their retirement … [which] would necessarily have been highly individualized for each potential retiree.").

A recent decision in which a court in the Second Circuit granted a motion to strike class allegations is on point.  In *Davis v. Navient Corp.*, the plaintiff asserted claims against a student loan servicer on behalf of himself and a class premised on purported misrepresentations regarding his best loan repayment options.  2018 WL 1603871, at *1.  In granting the defendants' motion to strike, the court held that "[t]he principles that render fraud claims unsuited for class certification are equally applicable here," and concluded that the lack of uniformity among the putative class members as to their alleged injuries precluded class certification.  *Id.* at *7.

The same reasoning applies here.  It is clear from the face of the FAC that Plaintiffs' allegation that they and members of the putative class were injured when they "left or forewent other work opportunities or educational plans," FAC ¶ 83, cannot be established though common proof.  In order to determine whether the proposed class members sustained injuries that are both unconscionable and non-speculative, *see supra* Points II.B and III.C, the Court will have to engage in a highly-individualized inquiry regarding these specific "work opportunities" and "educational plans," which would depend on a specific, case-by-case analysis.

\* \* \*

In sum, analyzing each of the elements of Plaintiffs' promissory estoppel and fraudulent inducement claims would necessitate highly individualized inquiries that dwarf any claimed common issues of fact that could be decided for the class, making a class-wide trial unmanageable.  Accordingly, Plaintiffs' class allegations should be stricken.

## <u>CONCLUSION</u>

For all of the foregoing reasons, the Court should grant Defendants' motion to dismiss the

First Amended Complaint in its entirety with prejudice, or, in the alternative, strike the class

allegations, together with such other and further relief as the Court deems just and proper.

Dated: August 3, 2020                               PROSKAUER ROSE LLP

                                                    */s/ Elise M. Bloom*_____
                                                    Elise M. Bloom
                                                    Rachel S. Philion
                                                    Pinchos N. Goldberg

                                                    Eleven Times Square
                                                    New York, New York 10036
                                                    (T)  212.969.3000
                                                    ebloom@proskauer.com
                                                    rphilion@proskauer.com
                                                    pgoldberg@proskauer.com

                                                    PROSKAUER ROSE LLP

                                                    Mark W. Batten
                                                    One International Place
                                                    Boston, Massachusetts 02110
                                                    (T)  617.526.9850
                                                    mbatten@proskauer.com
                                                    (admitted *pro hac vice*)

                                                    VENABLE LLP

                                                    Nicholas M. Reiter
                                                    1270 Avenue of the Americas, 24th Floor
                                                    New York, New York 10020
                                                    (T)  212.307.5500
                                                    nmreiter@venable.com

                                                    *Attorneys for Defendants*
                                                    MIKE BLOOMBERG 2020, INC. and
                                                    MICHAEL BLOOMBERG