THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| ALEXIS SKLAIR, STERLING RETTKE, NATHANIEL BROWN, BRIAN GILES, JOCELYN REYNOLDS, AND CARYN AUSTEN on behalf of themselves and all others similarly situated,<br><br>      Plaintiffs,<br><br>-vs.-<br><br>MIKE BLOOMBERG 2020, INC., AND MICHAEL BLOOMBERG,<br><br>      Defendants. | Case No. 20 Civ. 2495 (LTS) (GWG) |

**STIPULATION AND ORDER
CONCERNING PRODUCTION OF
ELECTRONICALLY STORED INFORMATION**

  WHEREAS, counsel for Plaintiffs and Defendants (collectively, the "Parties," and each, a "Party") have met and conferred regarding discovery of electronically stored information ("ESI") of the Parties;

  WHEREAS, the Parties have reached agreement on certain of the issues discussed regarding such discovery;

  WHEREAS, the Parties have entered into this Stipulation and [Proposed] Order Concerning Production of Electronically Stored Information ("Order") to facilitate the just, speedy, and inexpensive conduct of discovery involving ESI and to promote, to the fullest extent possible, the resolution of disputes regarding the discovery of ESI without Court intervention;

  IT IS HEREBY ORDERED that:

  1. All Parties are bound by and subject to the terms of this Order.

  2. <u>Definitions</u>.

    a. "Discovery Material" is defined as all products of discovery and all information derived therefrom, including, but not limited to, documents, objects and things,

deposition testimony, interrogatory/request for admission responses, and any copies, excerpts or summaries thereof, produced by any Party in the above-captioned matter.

        b.      Plaintiffs and Defendants, as well as their officers, directors, employees, agents, and legal counsel, are referred to as the "Parties" solely for the purposes of this Protocol.

        c.      "Plaintiffs" as used herein shall mean the Plaintiffs identified in the case caption above, as well as any other individually named plaintiff in this case or in any case that is consolidated with this matter.

3.      <u>Cooperation</u>.  The Parties shall conduct discovery in a cooperative manner, including without limitation, by reasonably drafting discovery requests and responses in accordance with Fed R. Civ. P. 1 and 26(g)(1); and producing ESI in accordance with Fed R. Civ. P. 34; and by meeting and conferring in good faith on topics such as identification of custodians of relevant ESI, potentially relevant data sources, search methodologies, and such other issues as may arise during the course of discovery.

4.      <u>Data Mapping & Information Exchange.</u> The Parties agree to exchange information addressing the topics listed in items (a) through (f) below, to the extent possible and/or applicable, followed by a meet and confer regarding topics (a) through (f) below. The Parties agree and understand that the information exchanged prior to and during the meet and confer will be based on their knowledge and understanding as of the date of the respective communication, and each Party agrees to notify the other Party in a timely manner if it learns that in some material respect information disclosed is incomplete or incorrect.

a) Custodians likely to have discoverable information, including (if applicable) job title and/or a brief description of job responsibilities and employment period for each individual to the extent that information exists and is reasonably accessible.
b) A general description of systems for electronic communications and ESI storage likely to contain discoverable information (e.g. shared network storage and shared electronic work spaces).
c) For databases identified that are likely to contain discoverable information (if any), the producing party should disclose the following information (to the extent that it is reasonably available and is relevant to the Parties' claims and/or defenses): Database name, type of database software platform, software version, business purpose, a list of existing relevant canned reports used in the ordinary course of operations, database owner/administrator, database field list within the scope of permissible discovery. As needed, the Parties will meet and confer to discuss reports and fields within the scope of permissible discovery.
d) A general description or, at the producing party's option, copies of the party's operative document retention policies, throughout the relevant time period, pertaining to known data within the scope of discovery.

      e) Whether unique, non-duplicative ESI within the scope of discovery is lost or destroyed after the legal hold obligations have been triggered in this case, if known.

      f) A description of any ESI within the scope of discovery that the producing party contends is inaccessible or only of limited accessibility and, hence, not producible by that party without undue burden and/or expense, including:

          i. The reasons for the Party's contention regarding accessibility; and

          ii. The proposed capture and retrieval process available (if any) for identification and/or recovery of the information deemed inaccessible (including cost estimates if readily available).

    5. <u>Search Methodology</u>.

      a. The Parties expect to employ one or more search methodologies, including possibly but without limitation the use of advanced search and retrieval technologies, to identify potentially relevant ESI. The Parties will meet and confer and attempt in good faith to reach agreement regarding:

          i. the method of searching and, if applicable, the words, terms, and phrases to be searched; and

          ii. the custodians and non-custodial sources (i.e., sources that do not correspond to a particular individual, such as, for example, loose electronic files from shared repositories) from whom ESI will be collected and searched.

Parties will validate search methodologies employed by measuring and data points, such as search term hits and elusion, to ensure adequacy and proportionality.

The producing party may utilize Technology Assisted Review ("TAR") on all or any mutually agreed-upon subset of collected data in its document review phase. The Parties will meet and confer regarding the specific data sets on which to apply and utilize TAR. No party shall use search terms or keywords as a culling step before the use of TAR. That is, should TAR be utilized by a party, it shall be utilized across an entire dataset. If applied, the producing party shall use an industry-standard machine learning technology to assess Responsiveness and review until an estimated 80% recall is achieved with a 95% confidence level and 5% margin of error. At the conclusion of a review in which TAR is used, the producing party will (1) disclose to the requesting party the total number of documents reviewed and the estimated recall rate achieved, and (2) perform an elusion test, reviewed by a subject matter expert from the producing party, of documents that were not reviewed by producing party for responsiveness with the assistance of TAR. This elusion test will represent a statistically valid sample that achieves a 95% confidence level and 5% margin of error.

      b.      The Parties will meet and confer regarding potentially responsive non-searchable files, such as non-searchable PDFs, corrupt, or encrypted files, that have been identified independently from any search term or text-based search protocol.

      6.      <u>Deduplication</u>.  The Parties shall make reasonable efforts to deduplicate ESI.  ESI shall be deduplicated vertically within custodians and horizontally across custodians.  ESI will be considered duplicative if it has the same content at the family level.  Removal of duplicate documents should only be done on exact duplicate documents (based on MD5 or SHA-1 hash values, at the family level).  Attachments should not be eliminated as duplicates for purposes of production, unless the parent email and all attachments are also duplicates.  For example, duplicates would include copies of the same electronic file saved on the local hard drives and/or network shared drives of multiple custodians, even if different instances of the file reflect different dates created.

      7.      <u>Email Threading</u>.  In order to reduce the volume of entirely duplicative content within email threads, the Parties may utilize "email thread suppression."  As used in this agreement, email thread suppression means reducing duplicative production of email threads by producing the most recent email containing the thread of emails, as well as all attachments within the thread, and excluding emails constituting exact duplicates of emails within the produced string.  For purposes of this paragraph, only email messages in which the parent document, senders and recipients, and all attachments are exactly the same will be considered duplicates.  In the event that email is withheld on privilege grounds, all members of the thread must be reviewed independently for privilege as applicable.

      8.      <u>Privilege Logs And Redaction</u>.

      a.      Per Local Rules of the United States District Courts for the Southern and Eastern Districts of New York Rule 26.2(c), documents withheld on the basis of privilege and/or work product protection may, when appropriate, be grouped in categories based on content, and a categorical privilege log prepared, including a privilege description for each category.  An email's metadata for the purpose of logging shall be based on the last-in-time email.  In lieu of a categorical privilege log, a Party may generate a metadata log for documents withheld on the basis of privilege and/or work product, including, at minimum, the document's date, sender/recipients, email subject line (or file name in the case of loose documents), basis for withholding (attorney-client and/or work product), and file type, except that if a metadata field contains information subject to the agreed-upon categories for redaction found in Paragraph 9(a), such information may be withheld.  In the event a Party desires further information concerning the basis for withholding of specific logged documents, the Party may request privilege log descriptions or categories be provided for the select documents.  In addition, the Parties agree that the following documents need not be included on a privilege log:

      i.      Communications between the parties and counsel (including internal communications within a law firm or a legal department of a corporation) on and after the filing of this lawsuit and before the

>> lawsuit in anticipation of litigation regarding the litigation or litigation strategy; or
>
>> ii. Work product created by or for trial counsel in this matter after commencement of this action.

> b. A document containing privileged content or work product need not be redacted if the content of the document that would otherwise be produced following the privilege redaction is non-responsive.

> c. After the receipt of a privilege log, any Party may dispute a claim of privilege, however, prior to any submission of any issue to the Court, the Party disputing a claim of privilege shall provide in writing the identification of the documents for which it questions the claim of privilege and the reasons for its assertion that the documents are not privileged. Within thirty days, the Party seeking to support the claim of privilege shall provide a written response supporting the claim of privilege (including legal support). The Parties will then meet and confer in good faith as to the claims of privilege. If agreement has not been reached after thirty days, any Party may thereafter submit a motion with the Court for a determination as to privilege.

9. <u>Production Format For ESI</u>.

> a. <u>General Provisions</u>. Unless the Parties agree to a different format, documents should be produced with TIFF images and named according to the Bates number of the corresponding TIFF image. Each *.tiff file should be assigned a unique name matching the Bates number of the corresponding image. The Bates number should be consistent across the production, contain no special characters, and be numerically sequential within a given document. Attachments to documents should be assigned Bates numbers that directly follow in sequential order the Bates numbers on the documents to which they were attached. If a Bates number or set of Bates numbers is skipped, the skipped number or set of numbers should be noted, for example with a placeholder. All images should be provided in single-page, Group IV TIFF with a resolution of 300 DPI. Bates numbers and confidentiality designations should be electronically branded on each produced *.tiff image. These TIFF images should not contain redactions other than those for privilege, personally identifiable information, sensitive personal information about individuals other than Plaintiffs, or as otherwise agreed to by the parties. These TIFF images should be provided in a separate folder and the number of TIFF files per folder should be limited to 1,000 files.

> b. <u>Document Text</u>. All unredacted documents should be provided with complete document-level extracted text files. In the event a document contains text which is to be redacted, OCR text files should be provided for any un-redacted portions of the documents. Document-level OCR text files should be provided for any unredacted portions of redacted documents and for all hard copy scanned documents. The extracted full text and/or OCR text for all deliverables should be in separate document-level TXT files. These TXT files may either be provided in a separate folder or included in the same folder as their corresponding images. The

number of TXT files per folder should be limited to 1,000 files. A UNC file path must be included in the ESI load file.

       c.       <u>Parent-Child Relationships</u>.  For email collections, the parent-child relationships (the association between emails and attachments) should be preserved and produced as full families except when withheld on privilege grounds.  Email attachments should be consecutively produced with the parent email record.

       d.       <u>Dynamic Fields</u>.  Documents with dynamic fields for file names, dates, and times will be processed to show the field code (*e.g.*, "[FILENAME]" or "[AUTODATE]"), rather than the values for such fields existing at the time the file is processed.

       e.       <u>Word Processing Files</u>.  All word processing files, including without limitation Microsoft Word files, that do not require redactions, will be produced as *.tiff images showing track changes and comments. Upon a showing of reasonable and particular need constituting good cause, a producing party shall produce a native version of requested files.

       f.       <u>Spreadsheet Files</u>.  Spreadsheet files, including without limitation Microsoft Excel files, that do not require redactions will be produced as native files.  The comments or similar data existing in the native file (if any) will not be scrubbed prior to production.  A UNC file path must be included in the ESI load file. Additionally a bates-stamped *.tiff placeholder matching the bates number of the native file, must be included in the production with the confidentiality designation and stating "File Provided Natively," and reflected in the image load file.  Redacted Spreadsheets may be produced either natively or in TIFF images so long as TIFF imaging does not degrade the usability of a given spreadsheet file.

       g.       <u>Presentation Files</u>.  Presentation files, including without limitation Microsoft PowerPoint files, will be produced as native files.  Any comments, hidden slides, speakers' notes or similar data existing in the native file (if any) will not be scrubbed prior to production.  A UNC file path must be included in the ESI load file. Additionally a bates-stamped *.tiff placeholder matching the bates number of the native file, must be included in the production with the confidentiality designation and stating "File Provided Natively," and reflected in the image load file. The Parties will meet and confer regarding production of presentation files with alternate default settings.  Redacted Presentation files may be produced either natively or in TIFF images so long as TIFF imaging does not degrade the usability of a given presentation file.

       h.       <u>Other File Types.</u>  Files subject to production for which a TIFF image cannot or does not reasonably represent such file (e.g., audio or video files) shall be produced natively with a corresponding and representative single page placeholder in accordance with other natively produced files.

       i.       <u>Database Records and Structured Data</u>.  To the extent that any Party requests information that is stored in a database or database management system, including but not limited to records of Plaintiffs' contact information, work telephone records, and/or log-

in/log-out records, the producing Party will identify the database and platform to the receiving party, and will meet and confer in good faith in an attempt to reach agreement on the data to be produced and the form of the production.  The producing Party will provide information about the database to facilitate that discussion, as set forth above in Paragraph 4(c).

Information produced from the database as a result of a report or query will be produced in a reasonably usable and exportable electronic file (for example, *.csv and/or *.xls formats) for review by the requesting Party, containing fields and reference points requested by producing Party.  To the extent this production format is not feasible or causes the producing Party undue burden, the Parties agree to meet and confer to discuss the different form of production.

      j.      <u>Embedded Files</u>.  Embedded files are produced as independent document records.  Embedded files should be assigned Bates numbers that directly follow the Bates numbers on the documents within which they are embedded.

      k.      <u>Time Zone</u>.  Unless otherwise agreed, all dynamic date and time fields, where such fields are processed to contain a value, and all metadata pertaining to dates and times will be standardized to Eastern Time (ET).  The Parties understand and acknowledge that such standardization affects only dynamic fields and metadata values and does not affect, among other things, dates and times that are hardcoded text within a file.  Dates and times that are hard-coded text within a file (for example, in an email thread, dates and times of earlier messages that were converted to body text when subsequently replied to or forwarded; and in any file type, dates and times that are typed as such by users) will be produced as part of the document text in accordance with Concordance and Summation formats, below.

      l.      <u>Load File Formats</u>.  ESI will be produced in standard Concordance load file format and an image file that is in .OPT format.

      m.      <u>Metadata to be Produced</u>.  The following metadata fields should be produced for each document to the extent that such information is available at the time of collection and processing, except that if (i) a field contains privileged information, that privileged information may be redacted, or (ii) a document or electronic file contains information within its producible metadata subject to the agreed-upon categories for redaction found in Paragraph 9(a), such information may be withheld.  All requests should be read to include a request for all metadata associated with all documents responsive to the request.

| FIELD NAME | DESCRIPTION | CATEGORY |
|---|---|---|
| **BEGDOC** | Starting bates | Hardcopy, edoc, email **and** attachment |
| **ENDDOC** | Ending bates | Hardcopy, edoc, email **and** attachment |

7

| FIELD NAME | DESCRIPTION | CATEGORY |
|---|---|---|
| CUSTODIAN | Custodial **or** non-custodial source(s) from which the **document** was collected | Hardcopy (if coded), edoc, email **and** attachment (populated through processing) |
| ALL CUSTODIANS | Custodial source(s) from which document was collected but subsequently suppressed as a duplicate during processing. | Edoc, email **and** attachment (populated through processing) |
| FAMILYIDOR ATTACHID | Family (Range of bates related **documents** (i.e email & attachment) - this field will be populated for **all** records in the family). | Hard copy, edoc, emails **and** attachments (populated through processing) |
| PRPERTIES OR RCRDTYPE | Record type – will be either "email," "attachment," "edoc," **or** "hardcopy." | |
| FROM | Email Author | Emails (populated through processing) |
| TO | Recipient | Emails (populated through processing) |
| CC | CC field - In the event of emails | Emails (populated through processing) |
| BCC | Bcc field - in the event of emails | Emails (populated through processing) |
| DOCTITLE | **Document** Title/name/subject of the original native file as it existed at the time of collection. | Hardcopy (if coded), edoc (including email) **or** attachment (populated through processing) |
| DOCDATE | **Document** Date/Date Sent, format MM/DD/YYYY, this is the SORT_DATE field, so populate across families | Email **and** Attachments |
| DATESENT | Email Sent Date, format MM/DD/YYYY | Emails (populated through processing) |

8

| FIELD NAME | DESCRIPTION | CATEGORY |
|---|---|---|
| **TIMESENT** | Time sent, format 00:00:00 AM/PM | Emails (populated through processing) |
| **DATECREATED** | Date first created, format MM/DD/YYYY | Edoc **or** attachment (populated through processing) |
| **DATESVD** | Date last saved/modified, format MM/DD/YYYY | Edoc **or** attachment (populated through processing) |
| **TIMESVD** | Time saved, format 00:00:00 AM/PM | (populated through processing) |
| **PAGECOUNT** | **Document** page count | Edoc **or** attachment (populated through processing) |
| **APPLICAT** | Application used to open the file (Word, Powerpoint, Adobe, Excel, Explorer, Quicken, etc.) | Electronic files **and/or** emails, attachments (populated through processing) |
| **FOLDERID OR ORIGFOLDERPATH OR FILEPATH** | File path/folder structure of original native file as it existed at the time of collection, provided such file path/folder structure is not privileged.<br><br>i.e. path of email in mailbox (populate for email attachments also); filepath of edocs **or** scanned **documents** | Electronic files **and/or** emails, attachments (populated through processing) |

| FIELD NAME | DESCRIPTION | CATEGORY |
|---|---|---|
| **ALL FILEPATHS** | File path/folder structure of original native file as it existed at the time of collection but subsequently removed as a duplicate, provided such file path/folder structure is not privileged.<br><br>i.e. path of email in mailbox (populate for email attachments also); filepath of edocs **or** scanned **documents** when duplicate copies were suppressed during processing. | Electronic files **and/or** emails, attachments (populated through processing) |
| **DOCLINK or NATIVEFILE** | Active link reflecting current filepath back to the native file | Electronic files **and/or** emails, attachments (populated through processing **and only provided if receiving native files**.) |
| **FILEEXTEN** | In the event of attachments **or** emails, this will enable us to search by **document** type.  Sample contents: *PST*, *MSG*, *PDF*, *DOC*, *PPT*, *HTM*, etc. | Electronic files **and/or** emails, attachments (populated through processing) |
| **FILESIZE** | Numerical file size, in bytes, of any natively-produced documents. | Electronic files and/or edocs (populated through processing). |
| **AUTHOR** | In the event of attachments, this field contains the 'author' of the **document** | For Hard Copy **documents** (if coded) **or** electronic files **and/or** attachments (populated through processing) |
| **HASH** | MD5 Hash value for de-dupe | Electronic files **and/or** attachments (populated through processing) |

10

| FIELD NAME | DESCRIPTION | CATEGORY |
|---|---|---|
| **REDACTED** | User-generated field that will indicate redactions; "X," "Y," "Yes," or "True" are all acceptable indicators that the document is redacted. Otherwise, the field is left blank. | All files |
| **CONFIDENTIALITY** | Text of confidentiality designation, if any | All files |
| **TEXTPATH** | Active link reflecting current relative filepath to the document text file | All files |

10. <u>Identification of Responsiveness to Requests.</u>  The Parties are under no obligation to identify within their production(s) the discovery request or requests to which the produced document is responsive.

11. <u>Production Format for Hard Copy Documents</u>.  Hard copy documents will be scanned and processed as .tiff images with OCR.  To the extent this production format is not feasible or causes the producing Party undue burden, the Parties agree to meet and confer to discuss the different form of production.

12. <u>Encryption</u>.  To maximize the security of information in transit, any media on which documents are produced may be encrypted by the producing Party.  In such cases, the producing Party shall transmit the encryption key or password to the requesting Party, under separate cover, contemporaneously with sending the encrypted media.

13. <u>Fed. R. Evidence 502(d) Order</u>.  Pursuant to Federal Rule of Evidence 502(d), the Court orders that a producing party's attorney-client privilege and work product protection is not waived by disclosure of the materials to the opposing side, if the disclosure is unintentional.  A producing party which seeks the return of documents under this section may request the return of documents which should have been withheld on the basis of the attorney-client and/or work product protection.  Upon receipt of such a request for return, the party to whom the documents were produced must segregate the documents and return them or seek, within thirty (30) days, a determination by the Court regarding whether the documents must be returned.  This Order shall be interpreted to provide the maximum protected allowed by Federal Rule of Evidence 502(d).

14. <u>Confidentiality</u>.  The Parties intend to enter into a Stipulated Confidentiality Agreement and [Proposed] Protective Order ("Protective Order").  Prior to the Parties' agreement on a Protective Order, and subject to the terms of any agreed-to Protective Order, the

Parties shall keep strictly confidential any information shared between Parties.  The Parties agree to take reasonable measures to ensure any such shared information is accessible only to the Parties and their counsel.  After the Parties have agreed to a Protective Order, the provisions of the Protective Order shall be construed as incorporated herein.  For the avoidance of doubt, nothing herein shall contradict the Parties' rights and obligations with respect to any information designated pursuant to the Protective Order.

15. <u>Authenticity and Admissibility</u>.  Nothing in this protocol shall be construed to affect the relevance, authenticity or admissibility of any document or data. All objections to the relevance, authenticity or admissibility of any document or data are preserved and may be asserted at any time.

16. <u>Costs</u>.  In the event, a Party requests the production of cumulative or repetitive information or information that otherwise imposes an undue burden, or is from a source that is not reasonably accessible due to undue burden or cost, the producing Party may object.  Upon objection, the Parties shall work in good faith to resolve the issue, for instance by producing samples or summaries of such documents at the producing Party's option.  In the event the parties are unable to resolve their differences, the parties may proceed consistent with the Federal Rules of Civil Procedure, including Rule 26(b)(2), and any applicable Local Rules.

SO STIPULATED AND AGREED.

By: /s/ David Berman
David Berman

**EMERY CELLI
BRINCKERHOFF ABADY
WARD & MAAZEL LLP**
Ilann M. Maazel
David B. Berman
500 Fifth Avenue, 10th Floor
New York, New York
Telephone: (212) 763-5000
Fax: (212) 763-5001
imaazel@ecbawm.com
dberman@ecbawm.com

**GUPTA WESSLER PLLC**
Peter Romer-Friedman
1900 L. Street, NW Suite 312
Washington, D.C. 20036
Telephone: (202) 888-1741
Fax: (202) 888-7792
peter@guptawessler.com

*Attorneys for Plaintiffs*

By: /s/ Elise Bloom
Elise M. Bloom

**PROSKAUER ROSE LLP**
Elise M. Bloom
Rachel S. Philion
Pinchos N. Goldberg
Allison L. Martin
Eleven Times Square
New York, New York 10036
Telephone: (212) 969-3000
Fax: (212) 969-2900
ebloom@proskauer.com
rphilion@proskauer.com
pgoldberg@proskauer.com
amartin@proskauer.com

**PROSKAUER ROSE LLP**
Mark W. Batten
One International Place
Boston, Massachusetts 02110
Telephone: (617) 526-9850
Fax: (617) 526-9899
mbatten@proskauer.com

**VENABLE LLP**
Nicholas M. Reiter
1270 Avenue of the Americas
New York, New York 10020
Telephone: (212) 307-5500
Fax: (212) 307-5598
nmreiter@venable.com

*Attorneys for Defendants*
MIKE BLOOMBERG 2020, INC.
and MICHAEL BLOOMBERG

**SO ORDERED**, on:     December 9, 2020

                                                BY THE COURT:

Gabriel W. Gorenstein
United States Magistrate Judge