

Proskauer Rose LLP   Eleven Times Square   New York, NY 10036-8299

June 1, 2021

**VIA ECF**

Elise M. Bloom
Member of the Firm

d +1.212.969.3410
f 212.969.2900
ebloom@proskauer.com
www.proskauer.com

Hon. Gabriel W. Gorenstein
U.S. Magistrate Judge
Daniel Patrick Moynihan United States Courthouse
500 Pearl Street, Courtroom 6B
New York, New York 10007-1312

Re:   *Wood et al. v. Mike Bloomberg 2020, Inc.* (20 Civ. 2489) (LTS) (GWG)
        *Sklair et al. v. Mike Bloomberg 2020, Inc. et al.* (20 Civ. 2495) (LTS) (GWG)

Dear Judge Gorenstein:

We represent Defendants Mike Bloomberg 2020, Inc. (the "Campaign") and Michael Bloomberg in the above-referenced matters. We write in opposition to the *Wood* and *Sklair* Plaintiffs' requests that the Campaign undertake the burden of searching, reviewing, and producing electronically stored information ("ESI") pending a determination on Defendants' pending motions to dismiss in both cases, even though undertaking the searches they currently seek will neither save any time later nor advance this litigation in any meaningful way.

**I.     Background**

Plaintiffs were employed as field organizers for the Campaign beginning in January 2020. At the outset of their employment, Plaintiffs signed multiple separate acknowledgements that their employment was "at will" and could be terminated "at any time." These documents also explicitly provided that no statement varying the at-will nature of Plaintiffs' employment would be effective unless set forth in a signed writing from an authorized representative of the Campaign. A few weeks after Mr. Bloomberg withdrew from the race in March 2020, the Campaign terminated Plaintiffs' employment.

Notwithstanding their express acknowledgment of their at-will status, Plaintiffs allege that they were "promised" continued employment through the general election in November 2020 regardless of whether Mr. Bloomberg won the Democratic nomination. In *Wood* and *Sklair*, Plaintiffs purport to allege common law claims for fraudulent inducement and promissory estoppel (the "Common Law" claims) on behalf of nationwide putative Rule 23 classes premised on that alleged "promise." In the *Wood* case—but not in the *Sklair* case—Plaintiffs also allege that the Campaign misclassified them as exempt from the Fair Labor Standards Act of 1938, 29 U.S.C. § 201, *et seq.* ("FLSA") and various state wage-and-hour laws and failed to pay them overtime during the few weeks in which they were employed by the Campaign.

Defendants have filed motions to dismiss or, alternatively, to strike the class allegations in both cases. In *Sklair*, Defendants moved to dismiss the First Amended Complaint in its entirety. (20 Civ. 2495, Dkt. 51-54.) In *Wood*, the Campaign moved for dismissal of the Common Law

**Proskauer»**

Hon. Gabriel W. Gorenstein
June 1, 2021
Page 2

claims, as well as the FLSA claims. (Dkt. 110-113.) These motions currently are fully briefed and pending before the Honorable Laura Taylor Swain.

> II. **Since the December 15 Hearing, the Campaign Has Continued to Engage In Discovery In Both Cases, Notwithstanding the Pending Motions to Dismiss.**

Because the pending dispositive motions could result in the dismissal of all claims in *Sklair* and significantly narrow the scope of the claims in *Wood*, Defendants moved for a limited stay of ESI discovery only pending the determination of the motions to dismiss.[1] During a hearing on December 15, 2020, the Court encouraged the parties to attempt to reach agreement as to whether some modicum of additional discovery could occur during the pendency of the motions to dismiss that would not impose an undue burden on Defendants.

Contrary to Plaintiffs' representation that "very limited additional discovery" has occurred since the December 15 hearing, the Campaign has made four productions of documents in *Wood* and three productions in *Sklair* since December 15, which span more than 25,000 pages in total.

In *Wood,* Plaintiffs also served a Second Set of Requests for Production of Documents ("Second Set of RFPs"), seeking, *inter alia,* deposition transcripts and documents produced by the Campaign in connection with four single-plaintiff litigations that were then-pending in Texas.[2] Those cases were also brought by field organizers for the Campaign, and also asserted claims for fraudulent inducement, promissory estoppel, and violations of the FLSA. The Campaign in those cases asserted the same grounds for dismissal as the pending motions in *Wood* and *Sklair*, and the Texas court has now agreed with all of those arguments and dismissed those cases. (*See* Dkt. 187.) The Campaign responded to the *Wood* Plaintiffs' Second Set of RFPs on March 31, 2021 and produced hundreds of responsive documents that had been produced in the Texas cases. Counsel for the *Sklair* Plaintiffs also has indicated that similar requests are forthcoming in the *Sklair* matter.

To date, the Campaign has produced nearly 20,000 documents in *Wood* and nearly 5,000 in *Sklair,* including the Plaintiffs' full Campaign email boxes and numerous other categories of responsive documents that could be located without requiring time-intensive ESI searches.

> III. **Conducting ESI During the Pendency of the Campaign's Motion to Dismiss Would Not Produce Any Efficiencies and Is Disproportionately Burdensome to the Campaign.**

---

[1] Before moving for a limited stay of ESI discovery, Defendants agreed to produce several categories of documents that could be located without onerous ESI searches, including producing the full Campaign email boxes for more than 20 Plaintiffs between the two cases.

[2] *Gueye v. Mike Bloomberg 2020, Inc.*, No. 4:20-cv-00487-BP (N.D. Tex.); *Hamilton v. Mike Bloomberg 2020, Inc.*, No. 4:20-cv-00488-BP (N.D. Tex.); *Jefferson v. Mike Bloomberg 2020, Inc.*, No. 4:20-cv-00489-BP (N.D. Tex.); and *Snow v. Mike Bloomberg 2020, Inc.*, No. 4:20-cv-00490-BP (N.D. Tex) (collectively, the "Texas cases").

**Proskauer»**

Hon. Gabriel W. Gorenstein
June 1, 2021
Page 3

      The *Wood* and *Sklair* Plaintiffs now ask the Court to direct the Campaign to undertake the time-intensive and costly process of collecting, searching, and producing ESI with respect to all of their claims—including those subject to the pending motions to dismiss—starting with Dan Kanninen, a senior member of the Campaign. Plaintiffs' request should be denied because it is onerous and disproportionately burdensome to require the Campaign to engage in ESI discovery at this time when such discovery ultimately may be unnecessary depending on the outcome of the Campaign's pending dispositive motions, and because undertaking such discovery now would yield no benefit to the Plaintiffs nor save any time in the event the motions are denied.

      The crux of Plaintiffs' request is their conclusory assertion that beginning ESI with Mr. Kanninen's Google-based ESI now as to all of their claims will "confer[] future benefits *regardless of the outcome of the motion to dismiss*." This position is entirely unfounded. As to the *Sklair* case, if the motion to dismiss is granted, then there will be no further discovery in *Sklair* at all because the case will be dismissed in its entirety. Clearly there can be no "future benefits" in *Sklair* if the pending motion is granted.

      The Campaign's dispositive motion in *Wood* also could significantly narrow the scope of discovery and would obviate the need for much of the ESI that Plaintiffs currently seek. In particular, there would be no need to conduct discovery as to issues relevant to the Common Law claims or the FLSA claims that are alleged on behalf of a nationwide putative Rule 23 class or collective. The only claims that would remain in *Wood* would be the state law wage-and-hour claims that are not subject to the pending motion to dismiss, but such claims are alleged under the laws of only seven states, with each cause of action brought on behalf of individuals who worked in that respective state. It is unduly burdensome and unnecessary for the parties to expend substantial time and resources negotiating search terms or training an algorithm for Technology Assisted Review ("TAR") with the objective of locating documents relevant to the Common Law and FLSA claims, only to have to re-negotiate searches or re-train a TAR algorithm if such claims do not survive the pending motions.[3]

      Plaintiffs' speculation that commencing ESI now will yield efficiencies for future discovery further rings hollow because their proposed ESI custodian, Mr. Kanninen, held a senior role in the Campaign. Relevant search terms or TAR training may well be different for Mr. Kanninen, given his unique position in the Campaign, than for the full corpus of discoverable ESI.

      Additionally, the ESI discovery that Plaintiffs now propose is not likely to save any time in the event the motions to dismiss are denied. Once the motions are decided and the parties know the issues that remain in the case, search terms can be negotiated without significant delay – indeed, Plaintiffs in their letter propose to allow just three days to reach agreement on initial search terms and generate a hit report. TAR training similarly can be done efficiently after the motions are

---

[3] It bears mention that even though Plaintiffs assert that the Campaign should be required to commence with expensive and burdensome ESI for Mr. Kanninen prior to a decision on the motions to dismiss, many of the *Wood* Plaintiffs (including Named Plaintiffs) have refused to produce any documents or information relevant to their Common Law claims.

**Proskauer»**

Hon. Gabriel W. Gorenstein
June 1, 2021
Page 4

decided, and more effectively once the full scope of ESI is being searched and the relevant issues are known.

Nor are the Plaintiffs likely to receive any information from the Kanninen search they propose that will advance the litigation while the motions are pending. The Campaign already has provided the *Wood* Plaintiffs with responsive documents that were produced in the now-dismissed Texas cases from Mr. Kanninen (among other custodians) in response to the Second Set of RFPs. Plaintiffs point to the documents produced in the Texas cases as apparent support for their request for ESI, but they fail to explain why the dozens of responsive documents for Mr. Kanninen that they already have are insufficient to inform a "refined, effective search process" that could be applied (if appropriate) after the pending motions to dismiss are decided. Since Plaintiffs already have documents from Mr. Kanninen, the value to Plaintiffs in obtaining additional documents from this custodian is diminished and certainly does not outweigh the burden that the Campaign would disproportionately bear if it is forced to commence with ESI.

Given the likelihood that the pending motions to dismiss will be decided in the near future, Plaintiffs' request should be denied because engaging in ESI discovery before a determination has been made on the threshold issue of whether Plaintiffs have stated viable claims would significantly and disproportionately burden the Campaign.[4]

We thank the Court for its consideration of this matter.

Respectfully,

*/s/ Elise M. Bloom*

Elise M. Bloom

cc:     All Counsel (via ECF)

---

[4] While Plaintiffs' request should be denied for all of the reasons set forth above, in the event it is not, the Court should not adopt Plaintiffs' proposed schedule for production of ESI, which extremely compressed and entirely unreasonable. The schedule proffered by Plaintiffs only affords the Campaign a mere seven (7) days to apply agreed-upon search terms; create the population for review; review a presently unknown number of documents for, *inter alia*, responsiveness, privilege, and confidentiality; implement any necessary redactions; conduct its pre-production quality control checks; and coordinate with its ESI vendor to begin producing responsive documents and accompanying metadata in accordance with the technical specifications in the parties' ESI Protocol.